810 F.2d 754
 UNITED STATES of America, Appellee,
v.
Lawrence Anthony WAJDA, Appellant.
UNITED STATES of America, Appellee,
v.
Donald Joseph WAJDA, Appellant.
UNITED STATES of America, Appellee,
v.
Andrew Lawrence WAJDA, Appellant.
UNITED STATES of America, Appellee,
v.
Ronald Joseph WAJDA, Appellant.
 Nos. 86-5194 to 86-5197.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1986.
Decided Jan. 26, 1987.
 
 Charles L. Hawkins, St. Paul, Minn., for Lawrence Anthony.
 Scott F. Tilsen, Asst. Federal Public Defender, Minneapolis, Minn., for Donald Joseph.
 Craig E. Cascarano, Minneapolis, Minn., for Andrew Lawrence.
 Douglas W. Thomson, St. Paul, Minn., for Ronald Joseph.
 Elizabeth De La Vega, Asst. U.S. Atty., Minneapolis, Minn., for appellee.
 Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and ARNOLD, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Defendants Lawrence Anthony, Donald Joseph, Andrew Lawrence and Ronald Joseph Wajda, brothers, appeal from final judgments entered in the district court[1] upon a jury verdict finding them guilty of various drug related offenses. Lawrence Wajda was convicted on five counts of distributing cocaine in violation of 21 U.S.C. Sec. 841(a)(1); one count of possession of cocaine with intent to distribute in violation of Sec. 841(a)(1), and one count of conspiracy to distribute cocaine in violation of Secs. 841(a)(1) and 846. Lawrence was sentenced to three concurrent ten-year terms of imprisonment followed by two concurrent three-year special parole terms. Donald Wajda was convicted on one count of distributing cocaine, one count of possession with intent to distribute, and one count of conspiracy. Donald was sentenced to three concurrent three-year terms of imprisonment followed by two three-year special parole terms. Andrew Wajda was convicted on one count of possession of cocaine with intent to distribute, one count of possession, and one count of conspiracy. Andrew was sentenced to a one-year term of imprisonment on the possession offense and two two-year terms of imprisonment on the remaining two offenses, the sentences to be served concurrently followed by a special parole term of three years. Ronald Wajda was convicted on one count of possession of cocaine with intent to distribute and one count of conspiracy. Ronald was sentenced to two concurrent thirty-month terms of imprisonment followed by a special parole term of three years.
 
 
 2
 On appeal, all the defendants raise the following issues: (1) lack of probable cause for the search of a house; (2) failure of the trial court to provide a hearing on allegedly false statements contained in the affidavit for the search warrant; (3) insufficiency of the evidence on Count VI (possession with intent to distribute) and Count VIII (conspiracy); and (4) prosecutorial misconduct. Donald Wajda raises two additional issues: lack of probable cause for his warrantless arrest and insufficiency of the evidence on Count V (distributing cocaine).[2] We affirm.
 
 
 3
 "Viewing the evidence in the light most favorable to the government," United States v. Baswell, 792 F.2d 755, 756 (8th Cir.1986), the facts are as follows.
 
 
 4
 The police made a series of undercover cocaine purchases on June 12, June 20 and July 3, 1985. These drug purchases were made by undercover police from Gene Fedora. The amount of cocaine involved in the purchases began at one-eighth of an ounce and escalated to one-half and then to an ounce. Such a process was used to gain the confidence of the people with whom the undercover agent was dealing and to facilitate larger purchases which would lead to the source of the cocaine. Through the use of surveillance teams and the undercover agent's observation of the telephone number as dialed by Fedora to reach his "source," the police determined that Lawrence Wajda was supplying the cocaine.[3]
 
 
 5
 At approximately 7:15 p.m. on July 7 undercover agent Thomas Rainville called Fedora to discuss the purchase of six ounces of cocaine. A pen register[4] attached to Fedora's telephone indicated that he called the telephone number listed for a residence at 1417 27th Avenue, N.E., Minneapolis, the home of Lawrence Wajda. Fedora then called Rainville back and told him the deal was set and to meet him at 2:00 p.m. the following day.
 
 
 6
 Rainville called Fedora the next day at 2:20 p.m. Fedora told him that he had just spoken to his source who was going to pick up the cocaine and they were to meet at a Tom Thumb store at 3:00 p.m. Lawrence left his residence at 2:25 p.m. together with a small child. Lawrence then drove to a shopping center and he and the child remained in the shopping mall approximately twenty minutes. Upon leaving the mall, Lawrence and the child drove to a house other than his residence. Only the child left the car and went into the house. Lawrence drove on alone to 2531 Benjamin Street, N.E., Minneapolis, the home of his brothers Donald, Ronald and Andrew Wajda and their mother. Lawrence arrived at the house at 3:25 p.m. Shortly thereafter Donald left the house and reached into a van parked outside. Donald returned to the house and Lawrence departed five minutes later, arriving home at 3:40 p.m.
 
 
 7
 Meanwhile, Rainville and Fedora met at the Tom Thumb at 3:15 p.m. Fedora said he would have to call his source and made two telephone calls to Lawrence's home, but said he received no answer. At 3:40 p.m. Fedora again called the number. This time Fedora said everything was set and that the buy would take place at a nearby park. Fedora and Rainville left for the park.
 
 
 8
 Donald left his house at 3:55 and arrived at Lawrence's at 3:58. In the meantime, Rainville gave Fedora $2,225.00 in recorded government funds.[5] Fedora then went to a pay phone and placed a call at 4:00 p.m. At 4:02 p.m. Donald and Lawrence left the house and drove off in different directions. Fedora and Lawrence met at the Tom Thumb store. Fedora returned to the park and handed Rainville a baggie containing two ounces of cocaine. Fedora asked Rainville for the rest of the purchase money saying his source was on the move and he was to meet him six or seven blocks away. During this conversation Rainville saw Lawrence drive by heading west toward Central Avenue. Fedora was arrested and a search of his person produced $20.00 in government funds used in making the purchase.
 
 
 9
 Lawrence was followed to 31st Street and Central Avenue where he pulled up to Donald's vehicle. Central Avenue is a busy thoroughfare and Donald had been observed waiting there for approximately twenty minutes before Lawrence arrived. Lawrence appeared to talk to Donald for several minutes, and as Lawrence prepared to leave the police arrested both him and Donald. Donald challenges his warrantless arrest as lacking probable cause. At a mid-trial suppression hearing the district court determined that probable cause existed to arrest Donald.
 
 
 10
 We review the district court's finding of probable cause to make the warrantless arrest of Donald under the clearly erroneous standard. United States v. McGlynn, 671 F.2d 1140, 1143 (8th Cir.1982). Probable cause exists to make a warrantless arrest when, at the moment of the arrest, the collective knowledge of the officers involved, United States v. Briley, 726 F.2d 1301, 1305 (8th Cir.1984), was "sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). The police may, based on their law enforcement experience, draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous. United States v. Wallraff, 705 F.2d 980, 990 (8th Cir.1983); McGlynn, 671 F.2d at 1144.
 
 
 11
 The police had a legion of evidence that Lawrence was Fedora's immediate source of cocaine. Prior to the time for the July 9 purchase the police were aware from statements made by Fedora that his source was going to get the cocaine. The reasonable inference from this was that Lawrence did not keep the cocaine at his house. Thus, when Lawrence left his house at 2:25 p.m. that day, the police believed he was going to the place where he had his cocaine stored. The only intervening stop between his house and Donald's in which Lawrence alighted from the car was at a shopping mall in the company of a small child. The circumstances make it highly improbable that the cocaine was located in the mall. Upon reaching the Benjamin Street address Donald entered the picture. Donald followed Lawrence back to his house where Lawrence awaited the final phone call to set the buy in action. Immediately after Fedora called his "source," Lawrence and Donald left the house and drove off in separate directions. Fedora had previously indicated that his source was cautious to the point of being paranoid. This statement is borne out by the actual mechanics of the deal. See supra n. 5. Indeed, one of the surveillance officers testified that he expected the money or cocaine to be divided between Donald and Lawrence to protect either one from being caught with all the money or cocaine. Thus, the concerted activities of Donald and Lawrence were consistent with those expected of a cautious drug dealer. Lawrence's meeting of Donald on a crowded city street in the middle of a $13,000.00 cocaine deal, in light of their other known actions, should be considered by the police to be much more than a fortuitous coincidence. Indeed, a finding here of lack of probable cause for a warrantless arrest would be incredible. Accordingly, we conclude that the district court's finding of probable cause is not clearly erroneous.
 
 
 12
 A search of Donald upon his arrest resulted in the seizure of $2,200.00 in government funds used in making the cocaine purchase. The police did not find, either on Donald or Lawrence, the remaining four ounces of cocaine which Rainville was to purchase. Thereafter, the police sought and obtained a search warrant for the house on Benjamin Street.[6] The affidavit in support of the warrant application recited essentially all the events of July 9 as set forth in this opinion. Towards the end of the affidavit the following allegation appears:
 
 
 13
 Due to the above fact, and the fact that surveillance officers at both Wajda residences observed numerous persons enter and exit from the residences and in order to prevent the removal and/or destruction of the remaining four ounces of cocaine, and other evidence, officer [sic] entered and secured this residence until search warrants could be obtained.
 
 
 14
 At a pretrial suppression hearing defendants moved for an evidentiary hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Defendants claimed that no surveillance reports of the Benjamin Street residence existed. Defendants further contend that, because the affiant's testimony at the suppression hearing was that he only saw two people enter and leave the residence on July 9, the reference to "numerous persons" was materially false and designed to mislead the officer issuing the warrant into believing the house had a constant traffic flow associated with drug dealings. The magistrate at the suppression hearing concluded that defendants had failed to make a sufficient showing to require a Franks hearing. The magistrate further found that, disregarding the allegedly false statement, the affidavit set forth sufficient information to support a finding of probable cause. The district court adopted the magistrate's Report and Recommendation and denied defendants' motion to suppress the items seized from the house.
 
 
 15
 We will not disturb the district court's decision regarding the validity of a search warrant unless clearly erroneous. Wallraff, 705 F.2d at 987. To receive a Franks hearing the defendants must satisfy a two-part analysis. First, the defendants must make a substantial preliminary showing of an intentional or reckless falsehood made in the affidavit. Franks, 438 U.S. at 155-56, 98 S.Ct. at 2676-77. Second, if, setting the alleged falsity to one side, sufficient content remains to support a finding of probable cause, no hearing is required. Id. at 171-72, 98 S.Ct. at 2684-85.
 
 
 16
 The substantiality requirement is not lightly met.
 
 
 17
 There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.
 
 
 18
 Id. at 171, 98 S.Ct. at 2684. The defendants have identified with particularity that portion of the warrant affidavit they believe to be false. Defendants, however, neither offered affidavits or other statements of witnesses as to the falsity of the warrant affidavit nor have they offered proof of recklessness or deliberateness in connection with the falsehood. Defendants contend that the statement of their attorneys at the hearing that no surveillance reports exist is sufficient to establish that the Benjamin Street house was not under surveillance. While we do not challenge the veracity of these attorneys, we do question the logic of their argument. The record reflects that the house was watched by the police for a period of time on July 9 and that two people were seen entering and leaving the house. Accordingly, defendants have failed to satisfy their initial burden on the first alleged falsehood (surveillance of the Benjamin Street residence).[7]
 
 
 19
 The second aspect of the defendants' challenge to the warrant affidavit is its reference to "numerous" persons. The affiant testified at the suppression hearing that he had personally seen only two people enter and leave the house. Even assuming that this testimony was sufficient to show a falsehood, defendants have totally failed to demonstrate that it was made deliberately or recklessly. See United States v. Bulgatz, 693 F.2d 728, 731-32 (8th Cir.1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 444 (1983). Therefore, the district court correctly denied the defendants' request for a Franks hearing.
 
 
 20
 Defendants also contend that the search warrant was issued without probable cause. "Reasonable minds frequently may differ on the question whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984); see also United States v. Packer, 730 F.2d 1151, 1155 (8th Cir.1984). Our task on appeal is "not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Massachusetts v. Upton, 466 U.S. 727, 728, 104 S.Ct. 2085, 2086, 80 L.Ed.2d 721 (1984) (per curiam); see also United States v. Reivich, 793 F.2d 957, 959 (8th Cir.1986). Lawrence left his house on July 9 after telling Fedora he was going to get the cocaine. The only time that Lawrence left his vehicle before arriving at the Benjamin Street address was to enter the shopping mall with a small child. Following arrest of Lawrence and Donald, a search by the police did not produce the remaining four ounces of the six-ounce cocaine deal. Substantial evidence existed in the warrant affidavit for the magistrate to conclude in the "totality of the circumstances" that there was "a fair probability that contraband or evidence of a crime" would be found in the Benjamin Street house. Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); see also Reivich, 793 F.2d at 959. Therefore, the district court did not err in refusing to suppress the items seized in the search of the house.[8]
 
 
 21
 The search of the Benjamin Street residence yielded much incriminating evidence. Because the defendants challenge the sufficiency of the evidence to sustain their convictions, a thorough cataloguing of the items seized is appropriate.
 
 
 22
 Defendants Donald, Ronald and Andrew Wajda, together with their mother, Antoinette Wajda, lived in the Benjamin Street residence. The main floor consisted of a common living area, Mrs. Wajda's bedroom and the kitchen. Donald and Ronald shared a bedroom on the second floor while Andrew had his own room. The police seized a triple-beam scale found on the dresser in Andrew's room. The scale's pan for weighing objects contained traces of cocaine. Three bindles were found in Andrew's dresser drawer.[9] The trash can in Andrew's room also contained several bindles. A metal lockbox was found under Andrew's bed. This box contained $4,500.00 in cash, four more bindles and a plastic baggie containing 16.4 grams of 77% cocaine.
 
 
 23
 The search of Donald and Ronald's shared room produced two more triple-beam balances, one under each bed.[10] Four plastic bags containing traces of cocaine were found on the bedroom floor. These bags were consistent with packaging normally used for one-pound quantities of cocaine. The police also found Ronald's wallet which contained a printed phone number, "77-GATOR." The phone number is listed to a Naples, Florida address. Finally, a note was found on the nightstand which read, "Don, coke is in the icebox downstairs."
 
 
 24
 In response to the note the police searched the refrigerator in the kitchen, but found neither cocaine nor coca-cola. There were also several iceboxes in the basement. A search of these also proved fruitless. Two boxes were, however, discovered on some wooden shelves in the basement. The first box contained two large packages of cocaine totalling approximately three and one-half pounds. This cocaine was 87% pure. The box also contained newspaper, apparently used for packaging, dated June 28, 1985. Markings on the outside of the box indicated that it had been shipped by Easy Mail from Naples, Florida. The second box contained approximately 6.3 ounces of 58% pure cocaine. Both boxes were unsealed.
 
 
 25
 Telephone records revealed that a number of phone calls to the Naples, Florida number found in Ronald's wallet had been made from both the Benjamin Street address and Lawrence's house. Two of those calls are significant because of their timing. One call was made from Lawrence's house on June 28, 1985, the date of the newspaper in the first box. The second significant phone call made to that number was from the Benjamin Street house on June 19, 1985, fifteen minutes after an earlier undercover sale of one pound of cocaine had fallen through.
 
 
 26
 All four defendants challenge the sufficiency of the evidence to convict them on Count VI (possession with intent to distribute the cocaine found in the basement) and Count VIII (conspiracy to distribute cocaine). In reviewing the sufficiency of the evidence we are guided by three principles.
 
 
 27
 First, the court must view the evidence in the light most favorable to the verdict rendered. Second, the court must accept all reasonable inferences from the evidence which tend to support the jury verdict. Third, the evidence need not "exclude every reasonable hypothesis except that of guilt but simply that it be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty."
 
 
 28
 United States v. Taylor, 599 F.2d 832, 838 (8th Cir.1979) (quoting United States v. Shahane, 517 F.2d 1173, 1177 (8th Cir.), cert. denied, 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975)) (citations omitted); United States v. Larson, 760 F.2d 852, 858 (8th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985).
 
 
 29
 The requisite possession to sustain defendants' convictions on Count VI may be either actual or constructive possession. Because the cocaine was not found in the actual physical control of the defendants, we are concerned with the question whether the defendants constructively possessed the cocaine. "This court has defined constructive possession as knowledge of presence plus control...." United States v. Caspers, 736 F.2d 1246, 1249 (8th Cir.1984). The possession "need not be exclusive, but may be joint." Id. Factors including occupancy of the premises where the drugs are found, United States v. Tolliver, 780 F.2d 1177, 1183 (5th Cir.1986), proximity to where the drugs are found, United States v. James, 764 F.2d 885, 889 (D.C.Cir.1985), or association with the person or persons in possession of the drugs, United States v. Staten, 581 F.2d 878, 884-85 (D.C.Cir.1978), may raise the inference of constructive possession, but are insufficient of themselves to support a conviction. Id.; United States v. Robinson, 782 F.2d 128, 130 (8th Cir.1986); Larson, 760 F.2d at 858. In order for the evidence to be sufficient to sustain a conviction for possession, there must be some nexus linking the defendant to the drugs. United States v. Cardenas, 748 F.2d 1015, 1019-20 (5th Cir.1984); Staten, 581 F.2d at 885.
 
 
 30
 Defendants Donald, Ronald and Andrew reside in the house where the drugs were found. The location of the drugs in a portion of the house accessible equally to all the occupants raises the inference that any one or all of them possessed the cocaine. Without more, however, this would be insufficient to sustain their possession convictions. The nexus linking these three defendants to the cocaine is provided by the abundance of drug paraphernalia found in their rooms. See United States v. Rackley, 742 F.2d 1266, 1272 (11th Cir.1984); Staten, 581 F.2d at 885; United States v. Tellis, 538 F.2d 1254, 1255 (6th Cir.1976). This evidence is particularly strong in Andrew's case as he was the sole occupant of his room and the evidence seized from his room is highly probative. Andrew's room contained bindles (commonly used to package cocaine for resale), a triple-beam scale (useful in making precise measurements for such packaging), a large amount of cash (often associated with illegal drug sales), and a quantity of very pure cocaine (approximately three times the strength usually sold in bindle-sized packages). Accordingly, we find that the evidence was sufficient to sustain Andrew's conviction of possession as charged in Count VI of the indictment.
 
 
 31
 The evidence against Donald and Ronald is likewise sufficient. The paraphernalia found in these two defendants' shared room is less voluminous than that found in Andrew's (a triple-beam scale found under each bed and packaging containing traces of cocaine); however, additional circumstantial evidence links both these defendants to the cocaine. The markings on the box containing the cocaine indicated that it had been shipped from Naples, Florida. A printed card in Ronald's wallet contained a Naples, Florida number and phone records indicated that calls had been made to that number from the Benjamin Street address. Additionally, a van parked in front of the Benjamin Street residence was registered to Ronald at a Naples, Florida address. A search of the van disclosed a mirror with traces of cocaine and a straw, both common devices in the personal use of cocaine. From this evidence a jury could reasonably find that Ronald participated in the transportation and possession of the cocaine. The note written to Donald, his participation in the July 9 sale,[11] and the paraphernalia found in his room are sufficient to prove Donald's possession of the cocaine.
 
 
 32
 Lawrence did not reside in the house where the cocaine was discovered; however, it does not necessarily follow that he did not therefore possess the cocaine.
 
 
 33
 [A] person who is sufficiently associated with the persons having physical custody so that he is able, without difficulty, to cause the drug to be produced for a customer can also be found by a jury to have dominion and control over the drug, and therefore possession. On the other hand, the casual facilitator who knows that a given principal peddles narcotics, but who does not have a working relationship with that principal which would enable him to assure delivery, lacks dominion and control and does not have possession.
 
 
 34
 United States v. Hernandez, 290 F.2d 86, 90 (2d Cir.1961) (citations omitted); see United States v. Weisser, 737 F.2d 729, 732 (8th Cir.1984) (approving jury instruction on constructive possession), cert. denied, 469 U.S. 1158, 105 S.Ct. 904, 83 L.Ed.2d 919 (1985); see also United States v. Wells, 721 F.2d 1160, 1162 (8th Cir.1983). The evidence demonstrated that Lawrence was able to produce the cocaine without difficulty. Phone calls were also made from Lawrence's residence to Naples, Florida from which the jury could conclude that Lawrence had participated in or caused its transportation. Therefore, we find that the evidence was sufficient for the jury to convict all four of the defendants of possession of cocaine as charged in Count VI.[12] The presence of the triple-beam scales and the large quantity of cocaine seized was sufficient evidence of defendants' intent to distribute. See United States v. LaGuardia, 774 F.2d 317, 319 (8th Cir.1985).
 
 
 35
 The defendants also challenge the sufficiency of the evidence to sustain their convictions of conspiracy to distribute cocaine. "The essence of a conspiracy is an agreement between two or more persons to commit an illegal act." United States v. Boone, 641 F.2d 609, 611 (8th Cir.), cert. denied, 454 U.S. 831, 102 S.Ct. 129, 70 L.Ed.2d 109 (1981). The agreement may be inferred from the actions of the parties. Id. The evidence that the defendants jointly possessed the large quantity of cocaine, together with the actual sales of cocaine, and the other evidence discussed herein, is sufficient to sustain the jury's verdict as to the conspiracy convictions.
 
 
 36
 Defendants' final claim of error is that a statement made by the prosecutor in closing argument amounted to misconduct. In the rebuttal portion of her closing argument the Assistant United States Attorney stated:
 
 
 37
 And Mr. Cascarano talked to you about a plague. And indeed, there was a plague in this case. And that plague is cocaine. It was easier for these defendants to make money selling this cocaine than it was running softball tournaments, running a bar that claimed a loss, and running a trucking company that only had a balance of $142. That is the plague in this case.
 
 
 38
 Defendants moved for a mistrial which was denied by the district court. Having reviewed the record as a whole, we find that in context of the entire arguments of counsel for both sides the district court did not err in denying a mistrial. See United States v. Pierce, 792 F.2d 740, 742 (8th Cir.1986).
 
 
 39
 The convictions of the defendants are affirmed.
 
 
 
 [1]
 The Honorable Robert G. Renner, United States District Judge, District of Minnesota
 
 
 [2]
 Some of the material before us, broadly read, might suggest Donald's inclusion in Count III of the indictment. However, we presume at this juncture a reference only to Donald's conviction on Count V
 
 
 [3]
 The preceding four (two one-eighth ounce sales occurred on June 12) cocaine purchases led to Lawrence's convictions on the first four counts of distributing cocaine. Because Lawrence does not challenge the sufficiency of the evidence for these convictions in his appeal, we have limited our factual summary of those purchases to the extent they provide a backdrop to the events of July 9
 
 
 [4]
 A pen register is a device which, when properly attached to a telephone line, will record the telephone number being called and the length of the call. It does not intercept the substance of the call
 
 
 [5]
 $2,225.00 was the purchase price of one ounce of cocaine. Fedora was to take the money to his source and return with two ounces of cocaine. Rainville would then pay for five ounces and Fedora would retreive the balance of four ounces
 
 
 [6]
 A search warrant was also obtained for Lawrence's residence. However, no evidence seized in that search was introduced at trial and we are not here concerned with the validity of that search warrant
 
 
 [7]
 The length of the surveillance or the fact that the observation of the house was occasioned because the police followed Lawrence to the Benjamin Street address is of little moment. The warrant affidavit recited only events taking place on July 9. A fair review of the challenged portion does not give the reader the impression that the surveillance was of an ongoing nature
 
 
 [8]
 In our review of the district court's decision on probable cause we note that the alleged falsehood in the warrant affidavit adds nothing to that finding. That portion simply explains why the police secured the premises prior to the issuance of a warrant. Defendants' assertion that the language was included to portray the residence as a situs of drug transactions is unfounded. Hence, even had defendants satisfied their initial burden to compel a Franks hearing, setting the alleged falsity to one side, the warrant affidavit contained sufficient content to support a finding of probable cause and no hearing was required. See Franks, 438 U.S. at 171-72, 98 S.Ct. at 2684-85
 
 
 [9]
 A bindle is a folded piece of paper commonly used to package cocaine in amounts up to one gram
 
 
 [10]
 Triple-beam balances are often associated with the illegal sale of cocaine. They are commonly used to weigh the cocaine for later sale
 
 
 [11]
 Donald also challenges the sufficiency of the evidence to sustain his conviction under Count V of the indictment. This claim is meritless. The evidence that we have found sufficient to justify his warrantless arrest, together with the evidence seized from the Benjamin Street residence, was sufficient for the jury to conclude that he participated in the sale
 
 
 [12]
 The government also argues that the evidence was sufficient to convict the defendants on the theory of aiding and abetting, 18 U.S.C. Sec. 2, which was also charged in Count VI of the indictment. The only aiding and abetting jury instruction, however, referred solely to the distribution charges (Counts I through V). Because we have found the evidence sufficient for the jury to convict each defendant of possession, a charge on which the jury was properly instructed, we do not reach the question of whether the defendants' convictions could rest on an aiding and abetting theory. See United States v. Wilson, 657 F.2d 755, 762-63 (5th Cir. Unit A 1981), cert. denied, 455 U.S. 951, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982); United States v. Martin, 747 F.2d 1404, 1407 (11th Cir.1984)