978 F.2d 1264
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of America, Appellee,
v.
Jose HERNANDEZ, Appellant.
 No. 92-2073.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: August 24, 1992.
Filed: November 11, 1992.
 
 Before MAGILL, LOKEN, and HANSEN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Jose Hernandez appeals his conviction following a jury trial and the sentence imposed on him by the district court[1] on a charge of conspiracy to distribute and possess with intent to distribute 272.5 grams of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Hernandez challenges the sufficiency of the evidence. We affirm.
 
 
 2
 At trial, Officer Thomas Washington of the North Little Rock Police Department testified that, while working undercover, he contacted Hernandez's codefendant, John Henry Allen, to arrange a drug deal. On November 21, 1991, Washington met with Allen and Hernandez at the home of Allen's sister, Helen James. Hernandez, who did not speak English, opened a vinyl bag he was carrying, revealing a plastic bag containing two large rocks (15.213 grams) of cocaine base. Hernandez handed the bag of cocaine to Allen, who gave it to Washington, and Washington paid Allen $450. After Allen told Washington that he would be returning to town in a few days, Washington gave Allen his beeper number and told Allen to contact him because he wanted to buy a larger quantity of cocaine. Allen later contacted Washington from Houston, Texas, and asked him how much cocaine he wanted. Washington told Allen that he wanted six ounces. On November 26, 1991, Allen again contacted Washington and told him that he had the cocaine and that Washington should bring $12,000 in cash to the house where they previously met.
 
 
 3
 Washington then met Allen, Hernandez, and their codefendant, Roberto Martinez, at the house. Hernandez and Martinez carried vinyl shoulder bags. Hernandez opened his bag and revealed several clear plastic bags containing large rocks of cocaine. Washington testified that, although he did not count the individual bags of cocaine, they were identical to ten bags of cocaine weighing 272.5 grams that were later found in the backyard of the house pursuant to a search warrant. Washington explained to defendants that he wanted to purchase only a sample of the cocaine at that time because he had a partner for the deal who wanted to look at the sample. After Allen and Hernandez argued, Martinez took one of the bags from Hernandez, broke off a small portion (.113 gram) of the cocaine base, and handed it to Washington. Washington then handed Allen a $100 bill. After leaving the area, Washington informed other officers that he had made the purchase inside the house and that there were three suspects. Officer Mike Davis immediately left to obtain a search warrant.
 
 
 4
 Davis testified that, within thirty minutes after Washington informed him that a purchase had been made in the house, he obtained a search warrant and returned to the house. Upon entering the house, Davis observed all three defendants. The search resulted in the seizure of a white plastic bag containing smaller bags of 272.5 grams of cocaine base, which Officer Robert Scott found in the backyard; bus tickets from Houston to Little Rock for Martinez and Hernandez; a bus ticket from Houston to Little Rock for Allen, which had Washington's beeper number written on it and which was found in Allen's gray briefcase; and the $100 bill that Washington had given to Allen. No drugs were found in the house, and no drug paraphernalia, weapons, or vinyl bags were found.
 
 
 5
 Scott testified that, after Washington left the house but before other officers arrived with the search warrant, he observed Isaiah Cook leave the house and drive away in a vehicle. Scott stopped Cook and later seized a $100 bill from him. Scott gave the $100 bill to Davis when he returned to the house. Scott testified that he conducted a thorough search of the backyard. He stated that the backyard was surrounded by a wooden privacy fence on the sides and a chain link fence in the back, and that it was accessible from the back of the house and through gates in the fence. Scott also testified that he found the white bag containing the smaller bags of the 272.5 grams of cocaine base along the side of a storage shed, and that the white bag had been covered with sticks and leaves but was not molded or mildewed.
 
 
 6
 Isaiah Cook testified that he lived at the house with Helen James. On November 26, Martinez had given him the $100 bill to purchase grocery items. Cook testified that Martinez had not been to the house before, but Hernandez had come a few days earlier with Allen from Texas. Helen James testified that, although some pickets were broken from the wooden fence, no one could get through because there was also a cyclone fence around the property, which was intact. She stated there was a gate at the very back of the yard. James also testified that, although she did not see any sort of travel bags, Hernandez and Allen had come to the house on November 26 to spend a couple of days over Thanksgiving, and that they had also stayed at the house a few days earlier.
 
 
 7
 In reviewing an insufficient-evidence claim, we must view the evidence in the light most favorable to the government and uphold the verdict if there is substantial evidence to support it. We may reverse only if the defendant shows that a rational jury would have had no choice but to reasonably doubt the existence of an element of the conspiracy. See United States v. White, No. 90-2862, slip op. at 7 (8th Cir. July 14, 1992). To prove the conspiracy charge, the government was required to show the existence of an agreement between Hernandez and at least one other person to commit the crimes of distribution and possession with intent to distribute the 272.5 grams of cocaine base. The existence of the requisite agreement could be shown by evidence that Hernandez and at least one of the other defendants jointly possessed the 272.5 grams of cocaine base and actually sold a portion of the cocaine base. See United States v. Wajda, 810 F.2d 754, 763 (8th Cir.), cert. denied, 481 U.S. 1040 (1987). Applying these standards, we find there was sufficient evidence to sustain the jury's verdict on the conspiracy charge. There was sufficient evidence that all defendants jointly possessed the 272.5 grams of cocaine base, all defendants actually distributed a portion of that cocaine, and all defendants intended to distribute the entire amount of that cocaine.
 
 
 8
 All three defendants occupied the premises when the 272.5 grams of cocaine base were found. Also, there was evidence linking all defendants to that cocaine. Washington testified that, just minutes before the officers arrived with the search warrant, he had met with defendants for the purpose of buying cocaine and observed Hernandez holding bags of cocaine that were identical to those found in the backyard. We, therefore, find there was sufficient evidence that all defendants jointly possessed the 272.5 grams of cocaine base. See United States v. Matra, 841 F.2d 837, 840 (8th Cir. 1988) (proof of constructive possession is sufficient to satisfy element of knowing possession); United States v. Patterson, 886 F.2d 217, 219 (8th Cir. 1989) (per curiam) (constructive possession may be proved by circumstantial evidence, which is "intrinsically as probative as direct evidence"); Wajda, 810 F.2d at 761-62 (defendants' occupancy of premises and proximity to location where drugs are found raise inference of constructive possession; evidence of nexus linking defendants to drugs is necessary to show constructive possession).
 
 
 9
 The testimony indicated that all three defendants took part in the actual sale to Washington of the .113 gram of cocaine base that was removed from the larger quantity. Allen arranged the meeting, Hernandez carried the drugs, Martinez handed the drugs to Washington, and Allen accepted the payment. Although defendants' intent to sell the remainder of the larger quantity can be inferred solely from their possession of it, see United States v. Schubel, 912 F.2d 952, 956 (8th Cir. 1990), there was additional evidence that Allen had instructed Washington to bring $12,000 to buy cocaine and Hernandez had produced the large quantity of cocaine for Washington's inspection. Intent to distribute the cocaine can also be inferred from defendants' past sale of 15.213 grams of cocaine base to Washington. See United States v. Lewis, 759 F.2d 1316, 1349 (8th Cir.) (evidence of similar prior drug transactions was admissible to show defendant's motive and intent to "willfully and knowingly" distribute cocaine), cert. denied, 474 U.S. 994 (1985).
 
 
 10
 We conclude the evidence showing defendants' joint constructive possession of the 272.5 grams of cocaine base, their joint participation in selling a sample, and their intent to distribute the remainder of the cocaine was sufficient to show they had reached an agreement to distribute and possess with intent to distribute the 272.5 grams of cocaine base.
 
 
 11
 Accordingly, we affirm.
 
 
 
 [1]
 The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas