986 F.2d 503
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES OF AMERICA, Appellee,
v.
Frank Joseph HAAS, Appellant,
 No. 91-3407.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: April 16, 1992.
Filed: March 1, 1993.
 
 Before McMILLIAN and BOWMAN, Circuit Judges, and EISELE,* Senior District Judge.
 PER CURIAM.
 
 
 1
 Frank Joseph Haas appeals his conviction and sentence on all counts of a multi-count indictment for possession with intent to distribute cocaine and marijuana, possession or use of a firearm in connection with a drug offense, and being a convicted felon in possession of a firearm. Haas argues numerous errors in the district court.[1] We affirm.
 
 I.
 
 2
 Count 1 of the superseding indictment charged Mr. Haas with possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841. Count 2 charged him with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841. Count 3 charged Mr. Haas with knowingly carrying or using a firearm in connection with the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Count 4 charged him with being a previously convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g).
 
 
 3
 The grand jury handed down the initial indictment after an investigation that began in March, 1991. An informant (Informant)[2] was incarcerated sometime around February 28, 1991, after being arrested for violating parole by selling cocaine to undercover agents. Through an attorney, Informant contacted the St. Louis Police Department in the hopes of striking a plea bargain. Informant specifically declined to testify against Informant's own source for cocaine, Mr. Ronnie Glen Sanders, because Mr. Sanders was a personal friend. However, Informant claimed to be able to identify and testify against the principal supplier for Mr. Sanders. Informant identified Appellant Haas as that person.
 
 
 4
 Informant's attorney arranged for Informant to speak with Detective Edward Vitt of the St. Louis County Police Department. Informant, on March 4 and 5, 1991, identified Appellant's house by description and by address. Informant stated that Informant had been to Appellant's house in November and December, 1990, when Informant saw Appellant sell cocaine to Mr. Sanders. Informant also stated that Informant observed some 50 pounds of marijuana and a loaded 30 shot machine pistol at Appellant's house.
 
 
 5
 Although Informant was incarcerated at the time Informant spoke to Detective Vitt, Informant also gave information concerning Mr. Sanders' contact with Appellant as recently as February 27, 1991. Informant stated that Mr. Sanders had been making two or three one-quarter pound purchases of cocaine per week from Mr. Haas over a period of several weeks. Informant further stated that on February 27, Mr. Sanders stated that "things were going really good ... business is rolling" because Appellant had just acquired 10 kilograms of cocaine.
 
 
 6
 Informant provided several other important pieces of information concerning Appellant's residence. Informant described the residence and further stated that Appellant had a cyclone fence surrounding his property, two large guard dogs, and an intruder detection alarm system. Informant also stated that Appellant had several agents in the neighborhood who kept watch and could identify surveillance activity for Appellant. Informant also stated that there was active drug traffic into and out of Mr. Haas' house notwithstanding all of the electronic protection.
 
 
 7
 Police confirmed a great deal of this information when they surveilled Appellant's home on March 4, 1991. Detectives remained in place for a very limited time, approximately one-half of an hour, because they hoped to avoid arousing suspicion. During that time, they confirmed the presence of an 8-foot high fence around the home, the presence of two German Shepherd guard dogs, and relatively heavy traffic: four separate vehicles either departed or arrived (or both) during the half-hour. Police determined that this was sufficiently corroborative of Informant's statements that they would continue the investigation.
 
 
 8
 Detective Vitt then contacted St. Louis Police Detective Rick Roberson. Detective Roberson stated that he had received an anonymous telephone call in December, 1990, naming Appellant as a major cocaine dealer in the area. Detective Roberson had not previously acted on the telephone call.
 
 
 9
 Detective Vitt also examined Appellant's criminal history. In 1981, two persons were arrested after selling cocaine to undercover federal agents. Both persons identified Appellant as their source but declined to testify against him. Mr. Haas also was arrested in December, 1985, for selling a controlled substance. The Federal Drug Enforcement Administration also received an anonymous telephone call in November, 1990, identifying Appellant as a major cocaine dealer in the St. Louis area.
 
 
 10
 Detective Vitt had Informant released to his custody for the purpose of verifying certain information. Informant led the police directly to the Haas residence without assistance from the police.
 
 
 11
 Detective Vitt additionally confirmed the substantive information set out above by contacting a local patrol officer assigned to the precinct that included Appellant's residence. This officer, John Wilsman, stated that he had independent sources that had identified Appellant as a major cocaine and marijuana supplier. Officer Wilsman further confirmed a statement by Informant that Appellant would periodically suspend his drug activity for a period of several weeks to a few months in order to avoid detection.
 
 
 12
 Informant declined to participate in an undercover purchase of cocaine from Appellant and Mr. Sanders. Informant apparently thought that Appellant would easily identify Informant as an informant after Informant had been arrested a few days earlier.
 
 
 13
 Based on the foregoing information, Detective Vitt on March 6, 1991, applied to St. Louis County Circuit Court for a search warrant of Mr. Haas' residence. Circuit Judge John Kintz on March 6 issued the warrant after making a determination that Detective Vitt had probable cause to believe that a crime was being committed at the Haas' residence. Detective Vitt described the basis for his assertion of probable cause in a six-page affidavit accompanying the application for a search warrant. The warrant stated that the search should take place within the next 10 days "by day or by night."
 
 
 14
 The next evening, Police arrested Mr. Ronnie Sanders, the person originally identified as Informant's supplier, immediately after he left Mr. Haas' residence. After the arrest, Police discovered that Mr. Sanders possessed 28.14 grams of cocaine.
 
 
 15
 Police decided that they had to execute the search warrant quickly after the arrest because they feared that Mr. Sanders would tip off Mr. Haas. Police also feared that Mr. Haas' neighborhood agents saw them in the process of arresting Mr. Sanders. They executed the search warrant at 2:30 a.m. on March 8, 1991, that is, only hours after arresting Mr. Sanders.
 
 
 16
 Police initially knocked on the door to the residence and identified themselves as police officers with a search warrant. No one responded, although Police were certain that the residence was occupied. They forced open the door. On entry, Police observed Mr. Haas' companion, Ms. Robin Rich, leave the master bedroom to be with her child, who was asleep on the couch in the living room. Police permitted Ms. Rich to take her son out of the house.
 
 
 17
 Police located Mr. Haas in the master bedroom. Inside the drawers and hidden compartments of the headboard to Mr. Haas' bed, Police found various weapons, $1,559 cash, and some ledger-type notes. Police found a number of other guns in the room. In the closet, they also found guns, a stereo box with the words "Frank Haas" written in ink, and a "Mr. Coffee" coffeemaker box. Inside the coffeemaker box, Police found two large bags of marijuana.
 
 
 18
 Officers continued their search into a second bedroom that appeared unoccupied. Detective Vitt there found pill bottles with Appellant's name on them, isolation masks and a number of other items. Under the mattress to the bed in the second room, Police located $7,520 in cash. In the dresser, Police discovered a blue bowl with eight large bags of cocaine inside it.
 
 
 19
 In the kitchen, officers found a scale, a container, a razor blade, and other utensils with cocaine residue on them. Police also found two jars of inositol, an agent sometimes used to cut the purity of cocaine for retail distribution.
 
 
 20
 At trial, Special Federal Drug Enforcement Agent Shirley Armstead testified that the marijuana found at the home, 819 grams, was worth as much as $6,000 at the retail level. The 203.95 grams of cocaine found at Appellant's residence was worth some $20,000 at the retail level. Both quantities were "distributable amounts," that is, they were too large to be for the personal use of Mr. Haas. Special Agent Armstead also testified that, from her experience, the ledger-type notes were an account of transactions involving the sale of illegal drugs.
 
 
 21
 Appellant put on evidence that he had been released from the hospital on March 4, 1991, after receiving post-operative care for difficulty with a January, 1991, heart transplant. Appellant also put on evidence that he had a live-in companion, Mr. Curtis Huebert, who took care of him, the house, the dogs, and the property during his illness. Mr. Huebert was not in the house at the time of the search on March 8, 1991, but had been there the previous day, as well as on March 4.
 
 
 22
 Appellant also put on evidence that Mr. Huebert lived in the second bedroom, that he had written some of the notes in the "ledgers," and that Mr. Huebert had been in Mr. Haas' bedroom on occasion. However, on cross-examination, Mr. Huebert denied that he had written all of the notes in the ledger, denied that any of the drugs, currency, or guns in the house were his, and denied any participation, knowledge, or involvement in a scheme to distribute illicit drugs.
 
 
 23
 Appellant further put on evidence that his step father, Mr. Charles Nelson, owned the residence, all of the guns in the residence, and the ammunition for all of the guns. Mr. Nelson testified that Mr. Haas never used the guns but had only taken them out of storage and put them away.
 
 
 24
 The jury returned a verdict of guilty on all counts. After the preparation of a Presentencing Report by the Probation Office, the district court sentenced Mr. Haas to 37 months concurrently on each of Counts 1, 2, and 4 to run consecutively to a 60-month sentence on Count 3, possession of a gun in connection with a drug trafficking offense.
 
 II.
 
 25
 Appellant challenges the district court's denial of his motion to suppress evidence because the judge issuing the search warrant allegedly did not have probable cause to issue it. We disagree.
 
 As this Court recently stated:
 
 26
 The sufficiency of a search warrant is determined on the basis of the information presented to the issuing official. The issuing official must decide whether in light of all the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The duty of a reviewing court is simply to insure that the issuing official had a substantial basis for concluding that probable cause existed.
 
 
 27
 United States v. Hibbard, 963 F.2d 1100, 1101 (8th Cir. 1992) (all internal citations and quotations removed) reh'g denied.
 
 
 28
 Appellant objects to the Magistrate Judge's (and district court's) conclusion that St. Louis County Circuit Judge John Kintz had a substantial basis for concluding that probable cause existed to issue the search warrant. Appellant claims that the evidence presented to Judge Kintz was uncorroborated, unreliable, and stale. Appellant also objects because the Magistrate Judge additionally adduced evidence outside of the affidavit in support of the warrant.
 
 
 29
 Appellant would have this Court examine the affidavit in support of the warrant on a paragraph by paragraph basis without any other information available. Given the allegedly insufficient information presented in each paragraph, Appellant urges this panel to conclude that the entire affidavit was faulty and that the issuing judge could not have had probable cause to issue the search warrant as a matter of law.
 
 
 30
 The Court declines to take up Appellant's invitation. There is a presumption of validity with respect to the affidavit supporting the search warrant. United States v. Crook, 936 F.2d 1012, 1014 (8th Cir. 1991) ( citing, Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684 (1978)). Appellants' claims here, as in the district court below, are nothing more than bald assertions unsupported by evidence.
 
 
 31
 The Court concludes that the district court's findings, upon which it based its denial of the motion to suppress, were not clearly erroneous. See, United States v. Gibson, 928 F.2d 250, 253 (8th Cir. 1991) (standard of review). In particular, the Court concludes that there is no error in finding that the information set forth in the affidavit is corroborated by substantial evidence. Nor is there any error in concluding that Informant provided reliable information. Nor is there any error in concluding that the information was not stale.
 
 
 32
 The information in the affidavit was corroborated by several sources. Detective Vitt apparently went to great lengths, in a very short time frame, to corroborate Informant's story. Detective Vitt verified some of the information in person, or through his agents, by going to the residence without Informant. Informant's description matched the physical layout of the property. Subsequently, Informant identified the property in person without assistance from the police. Detective Vitt also checked with a Drug Enforcement Agent in St. Louis who corroborated certain details in the affidavit. Detective Vitt also corroborated certain information with a local precinct officer.
 
 
 33
 The affidavit stated, on its face, that Informant was incarcerated and had attempted to make a deal with the police. The affidavit also stated that Informant was not willing to testify against Informant's supplier, Mr. Sanders. However, Mr. Sanders provided the link to Appellant. Informant clearly stated that Informant would testify against Mr. Haas at all stages of this proceeding. As the affidavit stated, both Mr. Sanders and Mr. Haas had previous convictions for possessing illegal drugs with the intent to distribute. So there was a substantial basis for the lower court's finding that the information was reliable.
 
 
 34
 Finally, the Court concludes that the district court was not clearly erroneous in finding that the information was not stale. Some of the information in the affidavit in support of the application for a search warrant dated back to 1982 and 1985. The presence of this information, however, "does not taint more recent information in the affidavit.... [W]here recent information corroborates otherwise stale information, probable cause may be found." United States v. Macklin, 902 F.2d 1320, 1326 (8th Cir. 1990). Informant apparently was arrested either on February 27, or February 28, 1991. Informant had spoken with Mr. Sanders on February 27 about Mr. Haas and the distribution of cocaine from Appellant to Mr. Sanders. On the record before this Court, that was sufficient.
 
 
 35
 Again, the Court declines simply to review, separately and in isolation, each paragraph of the affidavit. The Court reviews the affidavit, and the subsequent issuance of the warrant, based on the totality of the circumstances. The Court must review the affidavit as a whole. United States v. Anderson, 933 F.2d 612, 614 (8th Cir. 1991). There is no question in this case that the issuing judge had a substantial basis for determining that probable cause existed at the time he issued the search warrant.
 
 III.
 
 36
 Appellant challenges the district court's conclusion that the night-time search of his house was constitutional. The district court, by adopting the findings and recommendation of the Magistrate Judge, concluded that the underlying affidavit provided reasonable grounds for a nighttime search. The district court further concluded that the nighttime search was not unlawful. We agree.
 
 
 37
 First, the Court concludes that Missouri state law governs application and issuance of the warrant. At the time of the investigation, there was virtually no federal involvement. Consequently, the state search must only be reasonable under the Fourth Amendment in order for evidence to be admitted in a federal prosecution. United States v. Keene, 915 F.2d 1164, 1167 (8th Cir. 1990). Rule 41(c) of the Federal Rules of Criminal Procedure does not control. Detective Vitt alleged in the affidavit that Mr. Haas was violating Missouri law. The only showing of federal involve-ment in the case at that stage was the certification by a federal Drug Enforcement Administration Agent that he had received an anonymous telephone call targeting Mr. Haas as a drug dealer. Such a tenuous nexus is not sufficient to require compliance with the Federal Rules of Criminal Procedure or federal statute (21 U.S.C. § 879). See, United States v. Keene, 915 F.2d at 1167. Detective Vitt conducted a state investigation, not a federal investigation.
 
 
 38
 Detective Vitt complied with Missouri law when he applied for the search warrant. The search warrant provided that the police could execute the warrant at any reasonable time, day or night. Missouri law specifically permits a search to be made at night "if making it during the daytime is not practicable." Mo. St. § 542.291 (1989). The affidavit in support of the application for the warrant describes the situation facing the police, which was sufficient for the issuing official to conclude that it would not be practicable to execute the search warrant during the daytime. Among other pertinent facts, Informant put the police on notice that Mr. Haas had a number of guns, including automatic weapons. He also had guard dogs, intruder detection systems in his fenced-in yard, and agents keeping watch in the neighborhood. Finally, the affidavit alleged that at least some of the drug trafficking activity was conducted at night.
 
 
 39
 It was not clearly erroneous for the district court to conclude that the execution of the warrant was lawful. Given that the warrant was validly issued, Police had the discretion to execute the warrant within a ten-day period. After the state judge issued the warrant, Police apparently put Mr. Haas' residence under surveillance. At 9:30 p.m. on March 7, Police arrested Mr. Ronnie Sanders just after he left the Haas residence. Mr. Sanders possessed cocaine at the time. Police expected that Mr. Sanders would tip off Mr. Haas after being arrested. That expectation precipitated execution of the warrant some 5 hours later. It is undisputed that there was no federal involvement in the execution of the search warrant. The search was reasonable under the Fourth Amendment.
 
 IV.
 
 40
 The Court concludes that the evidence presented at trial was sufficient to convict Appellant of the crimes for which he was charged. The Court's standard of review on an appeal challenging a jury verdict is to view all the evidence in the light most favorable to the prevailing party, here, the government. The Court will not overturn the jury verdict unless a reasonable fact-finder must have entertained a reasonable doubt about the government's proof of one of the offenses' essential elements. United States v. Lyon, 949 F.2d 240, 242 (8th Cir. 1991). The government is entitled to the benefit of all reasonable inferences that may be drawn from the evidence. Id. Appellant does not contest this standard.
 
 
 41
 Constructive possession may be inferred from knowledge of presence plus control. See, United States v. Wajda, 810 F.2d 754, 761 (8th Cir. 1987) (citations omitted). Possession need not be exclusive. Factors for the Court to consider include the occupancy of the premises where the drugs are found and Appellant's proximity to where the drugs were found at the time of the search. Id., 810 F.2d at 761-62 (citations omitted). In order for such evidence to be sufficient to sustain a conviction for possession, there must be some nexus linking the defendant to the drugs. Id. Here, there was ample evidence to link Appellant to the drugs, including his proximity to the drugs, the presence of drug paraphernalia, the presence and location of the guns, and Appellant's apparent possession and control of the residence. The proof is sufficient to uphold on appeal a jury verdict both for possession of illegal drugs with intent to distribute and for possession of the firearms in connection therewith. See, United States v. Kiser, 948 F.2d 418 (8th Cir. 1991).
 
 
 42
 Appellant's primary argument is that the government failed to show that a home-care companion, Mr. Curtis Huebert, did not actually possess and control all of the illegal drugs, ledger notes, and paraphernalia at the residence. The Court disagrees with Appellant's argument. Mr. Huebert was not at the house at the time of the search. On the witness stand, Mr. Huebert denied owning any of the materials, including the drugs, the ledger notes, and the guns.
 
 
 43
 There were numerous loaded guns within easy reach of Mr. Haas as he lay on his bed. The ledger notes hidden in the compartment of his bedboard bore handwriting that did not belong to Mr. Huebert. There was $1,559 in cash near the ledger notes. There was some $6,000 worth of marijuana in the closet to Mr. Haas' room. Moreover, as Police searched the second bedroom, Mr. Haas attempted to enter it to retrieve some items. Police physically detained him and subsequently found nearly $20,000 worth of cocaine, some $7,520 in cash, and additional weapons. The total amount of money seized, $9,079, was within $211 of the total amount ($9,290) reflected in the ledger notes that were found in the bedboard to Mr. Haas' bed. Based on the foregoing, and the additional facts set forth at the outset of this opinion, the Court cannot say that the jury verdict was contrary to the weight of the evidence. See, e.g., United States v. Wajda, 810 F.2d 754, 762 (abundance of drug paraphernalia in individual defendants' rooms was sufficient nexus to hold them accountable for the drugs found on the premises, although not found in their individual rooms).
 
 
 44
 Appellant additionally argues that he merely kept the guns for his step-father but did not own them or use them. Specifically, Appellant put on testimony that he never fired the guns; that his step-father owned the guns and kept them in Mr. Haas' residence because the step-father wanted to keep them away from the step-father's children; and that Mr. Haas only handled the guns when taking them out of storage and returning them to storage after his step-father used them. The Court concludes that the jury was not required to credit this evidence. The government put on evidence, albeit largely circumstantial evidence, to the contrary.
 
 V.
 
 45
 The Court considers the remainder of Appellant's arguments. First, Appellant challenges the trial court's decision to admit government exhibits 26, 27, 28, and 29. These exhibits were the ledger-type notes. We review the adequacy of the district court's ruling for abuse of discretion. The determination of the adequacy of the foundation for the admission of evidence is left to the discretion of the trial court and will be overturned on appeal only if there has been a clear abuse of discretion. United States v. Franks, 939 F.2d 600, 602 (8th Cir. 1991).
 
 
 46
 In the instant case, the Court assumes, without deciding,[3] that admission of the four exhibits was an abuse of discretion because there was an inadequate foundation for their admission.[4] Defendant showed that at least one other person had access to the ledger notes; that at least one other person wrote some of the ledger notes; and that at least one additional person may have had access to the ledger notes. The government failed to provide either the jury or the DEA Agent who testified with any handwriting specimens which had been authenticated. Favorable comparison of such known information with the ledger notes would have been sufficient to authenticate the unknown handwriting on the notes. Fed. R. Evid. 901(a)(3). The government further failed to show clearly any known distinctive characteristics, that, taken in conjunction with the circumstances, would have been sufficient to authenticate the unknown handwriting on the notes. Fed. R. Evid. 901(a)(4).
 
 
 47
 However, the Court concludes that the error, if any, was harmless beyond a reasonable doubt in this case. Defendant at trial did not object to the DEA Agent's testimony, per se.[5] Defendant's only objection at trial concerned the lack of foundation for the admission of the four exhibits, which are allegedly ledgers for the retail distribution of cocaine. The Court concludes that the four exhibits were not needed for the jury reasonably to find Defendant's intent to distribute the cocaine involved. The admission of the four exhibits was not manifestly unjust and did not affect the substantial rights of Defendant. See, Fed. R. Evid. 103(a). The possible impact of the four exhibits must be evaluated in light of all the other evidence which could support the jury's finding of possession of cocaine with intent to distribute: The quantity of cocaine itself, nearly 204 grams at a street value of $20,000; the tangible evidence of preparation, including scales, bowls, razor blades, spoons, spatulas, all with cocaine or powder residue, and cutting agents; the presence of substantial quantities of cash; the presence of marijuana in distributable amounts (not contested here); the presence of the guns; and finally, Defendant's presence in, and apparent control over, the house. The jury also was made aware that there was no proof that the notes were in the Defendant's handwriting, and that some of the handwriting was done by Mr. Huebert. So the inference of intent arises here independently of any inference that might arise as a result of introduction into evidence of the ledger notes. Admission of those notes was therefore harmless in light of all the surrounding circumstances. Fed. R. Evid. 103(a); Fed. R. Crim. P. 52(a).
 
 
 48
 Appellant additionally challenges the district court's decision to give Eighth Circuit Model Criminal Jury Instruction[6] § 1.04 as opposed to Devitt and Blackmar's Instruction[7] § 15.02 concerning circumstantial and direct evidence. Both Appellant and the government submitted § 15.02 in their respective proposed jury instructions. The district court sua sponte substituted the Eighth Circuit Model Instruction.
 
 
 49
 The Court concludes that the district court did not abuse its discretion when it gave the Eighth Circuit Model Instruction. The district court has wide discretion in determining the appropriate jury instructions and its choices of particular instructions may be reversed only for an abuse of discretion. United States v. Hankins, 931 F.2d 1256, 1262-63 (8th Cir. 1991) (internal quotations and citations omitted); United States v. Thomas, 946 F.2d 73, 77 (8th Cir. 1991). A defendant is not entitled to a particularly worded instruction where the instructions given adequately and correctly cover the substance of the requested instruction. United States v. Gutberlet, 939 F.2d 643, 647 (8th Cir. 1991).
 
 
 50
 The Eighth Circuit Model Instruction does not misstate the law. There was no harm to Defendant by giving the Model Instruction as opposed to the Devitt and Blackmar Instruction. See, Fed. R. Crim. P. 52(a) (harmless error).
 
 VI.
 
 51
 Appellant finally challenges his sentence. The district court imposed three concurrent sentences of 37 months on Count 1 (distribution of cocaine), Count 2 (distribution of marijuana) and Count 4 (felon in possession of a gun). The district court additionally imposed a consecutive sentence of 60 months on Count 3 (possession or use of a gun in the commission of a drug offense).
 
 
 52
 The Court concludes that there is no error in the imposition of the sentence here. This Court does not have the power to review the district court's failure to depart from the range established by the applicable guideline. United States v. Laird, 948 F.2d 444, 447 (8th Cir. 1991) (citations omitted). The evidence of the quantity of cocaine Mr. Ronnie Sanders possessed, 28.14 grams, when he left Appellant's house, if subtracted from the total quantity of drugs for which Mr. Haas was held responsible at sentencing, would result in a sentencing range of 30 to 37 months on Counts 1, 2, and 4, under the Guidelines. Defendant's Guideline sentence for those counts was within the Guideline range. The purity of the drugs involved does not affect the computation under the Guidelines. Therefore the district court's consideration of these two items, Sander's drugs and the purity of the drugs involved, would not affect the sentence. The error, if any, was harmless. United States v. Nash, 929 F.2d 356 (8th Cir. 1991); Fed. R. Crim. P. 52(a).
 
 
 53
 AFFIRMED.
 
 
 
 *
 The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Informant's name is a matter of record in this case. The Court omits the name and all references to Informant's sex because Informant's identity is not critical to the issues before the Court
 
 
 [3]
 The Court leaves undecided the question of admissibility of notes found at a location in the control of a defendant where those notes, in the opinion of an expert witness, reflect drug dealings, without proof of the authorship of the notes
 
 
 [4]
 The Court notes the concession of the Assistant United States Attorney who argued the case to this Court: The government easily could have, and should have, taken a handwriting exemplar from Defendant for purposes of comparison. This is a case where the government apparently thought it had an air-tight case and so failed to take a virtually cost-free step, that is, compelling a handwriting exemplar from Defendant, in order to lay a proper foundation for the admission of the notes
 
 
 [5]
 Appellant at oral argument for the first time contended he objected to all of the DEA Agent's testimony because it was predicated upon the four exhibits. Appellant waived this issue because he failed to raise this defense in the district court. Fed. R. Crim. P. 12(b)(1); United States v. Schmidt, 935 F.2d 1440, 1450 (4th Cir. 1991); see, Thelen Oil Co., Inc. v. Fina Oil & Chemical Co., 962 F.2d 821, 823 (8th Cir. 1992)
 
 
 [6]
 "[S]ome of you may have heard the terms 'direct evidence' and 'circumstantial evidence.' You are instructed that you should not be concerned with those terms. The law makes no distinction between direct and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive." Eighth Circuit Model Criminal Jury Instruction § 1.04 (from the last paragraph of Eighth Circuit Model Criminal Jury Instruction § 1.03)
 
 
 [7]
 There are two types of evidence from which you may find the truth as to the facts of a case-direct and circumstantial evidence. Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eyewitness; circumstantial evidence is proof of a chain of facts and circumstances indicating the guilt or innocence of a defendant. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty. Devitt and Blackmar, Federal Jury Practice and Instructions § 15.02 (1977 ed.)