UNITED STATES of America, Appellee,

v.

Jamal Deshon SEGARS, Appellant.

No. 93–3893.

United States Court of Appeals, Eighth Circuit.

Submitted May 13, 1994.

Decided Aug. 2, 1994.

656

Randall E. Kahnke, Minneapolis, MN, argued, for appellant.

D. Gerald Wilhelm, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

Jamal Deshon Segars appeals from a final judgment entered in the District Court[1] for the District of Minnesota finding him guilty, upon a jury verdict, of conspiracy to possess with intent to distribute cocaine base (crack) in violation of 21 U.S.C. §§ 841(b)(1)(A), 846, and aiding and abetting possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(b)(1)(A), 18 U.S.C. § 2. The district court sentenced Segars to a term of 121 months imprisonment, 5 years supervised release and a special assessment of $100.00. For reversal, Segars argues that the district court erred in denying his motion to suppress certain physical evidence.[2] For the reasons discussed below, we affirm the judgment of the district court.

1. The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota.

2. The Honorable J. Earl Cudd, United States Magistrate Judge for the District of Minnesota, conducted the suppression hearing and issued a report and recommendation that recommended denial of Segars's motion to suppress. *United*

*States v. Stinson*, Crim. No. 4–93–64 (D.Minn. May 14, 1993) (report and recommendation). The Honorable David S. Doty, United States District Judge for the District of Minnesota, based upon a de novo review of the record, adopted the magistrate judge's recommendation. *United States v. Davis*, Crim. No. 4–93–64(3) (D.Minn. June 29, 1993) (order).

## I. BACKGROUND

On March 9, 1993, Minneapolis police officers entered Charles Davis's apartment pursuant to a search warrant. Davis and another man were arrested after the police discovered crack cocaine, cash and handguns. Davis confessed to his involvement in drug dealing and told police he was expecting a shipment of crack cocaine to arrive at his apartment between 1:00 a.m and 2:00 a.m on March 10, 1993. The only other relevant information Davis provided was that the source of the shipment was in Detroit and that the courier's vehicle would probably have Michigan license plates.

The police decided to wait for the drug shipment; four police officers returned with Davis to the apartment. The apartment had been burglarized between the time of the search and their return to await the crack cocaine shipment, causing the officers concern that the courier had been informed of Davis's arrest. Despite this possibility, the police remained with Davis inside the apartment throughout the evening of March 9 and the early morning of March 10, 1993. At least two telephone calls were received by Davis while waiting for the drug shipment. One caller asked Davis whether he had been arrested and if police were present in the apartment. The other call, received at approximately 1:30 a.m., was from the drug courier informing Davis that the shipment was delayed because of a snowstorm.

At approximately 5:30 a.m. surveillance officers on the street informed the officers waiting inside the apartment that a car with Michigan license plates had arrived and that three persons were approaching the building. Shortly thereafter, Davis received a call from a telephone at the building's front security door. Without talking with the caller, Davis pressed a button to open the security door. At this point the police secured Davis in a bedroom closet and waited inside the apartment by the front door.

Segars and two others approached Davis's apartment. When Segars knocked on the door, three officers emerged wearing police raid jackets with their badges displayed and guns drawn. The police identified themselves and immediately ordered everyone to the ground. Segars' two companions complied immediately, but the parties dispute the actions taken by Segars. Segars testified that he immediately complied with the officers' order and dropped everything he was carrying, including a small black package. Two officers testified that Segars dropped the package and then attempted to flee. The officers apprehended Segars about 15' from the apartment door and arrested all three of them. The police opened the black package and discovered over 50 grams of crack cocaine.

Segars was charged with conspiracy to possess with intent to distribute crack cocaine and aiding and abetting possession with intent to distribute crack cocaine. Following a suppression hearing, the district court denied Segars's motion to suppress evidence as the result of an illegal search and seizure. The district court found that the officers had probable cause to effect a warrantless arrest of Segars. Report and recommendation at 4, citing *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949), *and United States v. Wajda,* 810 F.2d 754, 758 (8th Cir.) *(Wajda ), cert. denied,* 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987). Any search was incidental to the arrest and therefore valid. Report and recommendation at 5 & n. 2, citing *United States v. Robinson,* 414 U.S. 218, 235, 94 S.Ct. 467, 476–77, 38 L.Ed.2d 427 (1973) *(Robinson).* The district court further found that the warrantless search did not violate the Fourth Amendment because Segars abandoned the package. Report and recommendation at 5, citing *United States v. Koessel,* 706 F.2d 271, 274 (8th Cir.1983) *(Koessel ), and United States v. Jones,* 707 F.2d 1169, 1172 (10th Cir.), *cert. denied,* 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). The jury found Segars guilty on both counts and the district court sentenced him to 121 months in prison, 5 years supervised release and a special assessment of $100.00. This appeal followed.

## II. ABANDONMENT

■ Segars argues that the district court erred in finding that he abandoned the package containing the crack cocaine. He con-

tends instead that he dropped the package in response to the officers' show of authority or, in the alternative, that a police officer touched him and therefore seized him before he dropped the package. We review for clear error the district court's finding that Segars abandoned the package containing the crack cocaine. *United States v. Miller,* 974 F.2d 953, 957 (8th Cir.1992) (*Miller*). We review questions of seizure *de novo. United States v. McKines,* 933 F.2d 1412, 1424–26 (8th Cir.) (banc), *cert. denied,* —— U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991). We hold that the district court's finding of abandonment is not clearly erroneous.

The warrantless seizure of abandoned property does not violate the Fourth Amendment. *Abel v. United States,* 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960). This is because "[w]hen individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." *United States v. Jones,* 707 F.2d at 1172. "The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." *Id.* "An expectation of privacy is a question of intent, which 'may be inferred from words spoken, acts done and other objective facts.'" *Id.* (citation omitted). However, abandonment cannot be the product of unlawful police conduct. *Koessel,* 706 F.2d at 274.

We agree with the district court that Segars abandoned the package. The evidence showed that, when confronted by police officers, Segars dropped the package, backed away from the apartment door and attempted to flee. *See, e.g., United States v. Willis,* 967 F.2d 1220, 1223 (8th Cir.1992) (*Willis*) (defendant abandoned shopping bag by dropping it in parking lot with police in hot pursuit); *Koessel,* 706 F.2d at 274 (defendant abandoned drugs by throwing packet out car door).

We do not agree with Segars's argument that he had been "seized" before he dropped the package and that therefore the package abandoned was the fruit of a seizure. The facts in the present case are similar to those in *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991) (*Hodari D.*). In that case, the defendant fled at the approach of an unmarked police car. An officer who was wearing a jacket marked "Police" chased the defendant. While he was running away, the defendant threw down what was later proved to be crack cocaine. Moments later the police officer tackled the defendant and handcuffed him. The defendant argued that he had been "seized" at the time he threw down the cocaine and therefore the cocaine was the fruit of that seizure and should have been excluded. Justice Scalia, writing for the majority, rejected this argument, holding that "with respect to a show of authority as with respect to an application of physical force, a seizure [does not occur] even though the subject does not yield.... An arrest requires *either* physical force ... *or,* where that is absent, *submission* to the assertion of authority." *Id.* Justice Scalia concluded that even "assuming that [the police officer's] pursuit ... constituted a 'show of authority' enjoining [the defendant] to halt, since [the defendant] did not comply with that injunction he was not seized until he was tackled." *Id.* at 629, 111 S.Ct. at 1552.

In the present case Segars was not seized until after he dropped the package. The police officers' order to drop to the ground constituted the requisite show of authority, but, like the defendant in *Hodari D.,* Segars did not comply with that injunction. Instead, he dropped everything he was carrying, including the package, backed away from the door and ran down the hall. He was not seized until he was apprehended by the police. *See Willis,* 967 F.2d at 1223 (defendant was not "seized" during flight from police when he dropped shopping bag).

## III. UNLAWFUL POLICE CONDUCT

A finding of abandonment does not end our inquiry because Segars argues that his abandonment of the package was the product of unlawful police conduct. Segars argues that the lack of specific information from Davis characterizing the drug courier necessitates a finding of a lack of probable cause to arrest him. We review for clear error the district court's finding that there

was probable cause to arrest Segars. *Wajda*, 810 F.2d at 758; *United States v. Wallraff*, 705 F.2d 980, 987 (8th Cir.1983) (*Wallraff*). Again, we agree with the district court.

In determining whether probable cause exists to make a warrantless arrest, the court looks to the totality of the circumstances to see whether a prudent person would believe the individual had committed or was committing a crime. *Illinois v. Gates*, 462 U.S. 213, 232–33, 103 S.Ct. 2317, 2329–30, 76 L.Ed.2d 527 (1983); *Wajda*, 810 F.2d at 758; *Wallraff*, 705 F.2d at 990. The police may draw reasonable inferences from circumstances which the general public may find innocuous. *Wajda*, 810 F.2d at 758 (citing *Wallraff*, 705 F.2d at 990). In the present case, the circumstances warrant a finding of probable cause for the police to arrest Segars.

Davis informed the police that a drug courier from Detroit would be making a delivery to his apartment. The police were present when Davis received a telephone call from the alleged courier informing him that the delivery was delayed due to a snowstorm. Segars arrived at Davis's apartment building in a car with Michigan license plates at the time the drug courier was expected to arrive. It was 5:30 a.m., during a snowstorm, and Segars went directly to the apartment door of a known drug dealer, making it highly unlikely that it was a mere social visit. It was not clearly erroneous for the district court to find that the police had probable cause to believe that Segars and his companions were drug couriers actively engaged in criminal activity, and justified in making a warrantless arrest.

Accordingly, the judgment of the district court is affirmed.