BOWMAN, Chief Judge.
The United States appeals from the order of the District Court approving without further analysis the Report and Recommendation of the Magistrate Judge to whom pretrial motions had been referred, thereby sustaining Yiu-Pong Liu’s motion to suppress evidence and statements as illegally obtained. We reverse.
The facts of the case are essentially without dispute. On the morning of August 28, 1998, drug interdiction detectives Dan Wilson and George Barrios of the Kansas City, Missouri, Police Department boarded an Amtrak train en route from Los Angeles to Chicago at its regularly scheduled stop in Kansas City. As they made their way through the coach cars of the train, Barrios spotted a black suitcase in the overhead storage rack that ap *959 peared to be brand new, with a blank name tag and two luggage keys still attached to the handle of the bag. The suitcase fit the profile, Barrios believed, of a drug courier’s bag. Barrios lifted the suitcase and found it unusually heavy. Leaving the bag in the overhead rack, he felt the exterior and identified a solid object that he thought was a bundle of illegal drugs. Barrios moved the bag to the seat just behind the seat where Liu appeared to be sleeping and he began asking passengers if the bag belonged to any of them. When no one claimed the suitcase, Barrios moved it to the aisle and woke Liu to ask if the bag belonged to him. Liu, appearing nervous, grabbed the handle of the bag and said that it was his. Barrios identified himself as a police officer and asked Liu if he understood. Liu said that he did. Barrios then asked again if the suitcase in fact belonged to Liu, or if his suitcase might not be a similar-looking bag still in the rack directly over his seat. Liu partially unzipped the bag that Barrios had placed in the aisle and pulled out a piece of clothing, took a pair of sunglasses out of a side pocket, and confirmed that the bag was his.
At this point, Barrios asked Liu for permission to search the suitcase for narcotics, and he consented. As Barrios began to unzip the bag, Liu revoked his consent to search and zipped the bag back up. Barrios then asked Liu for his train ticket. At that, Liu walked past Barrios and off the train without responding to Barrios or attempting to take the bag with him. Barrios and Wilson permitted him to do so, but Barrios advised other members of the interdiction squad by radio, that a suspect who had refused a search of his luggage was leaving the train. Wilson followed Liu off the train, and heard him say he was looking for a woman. Liu began walking toward the terminal. His pace quickened and he largely ignored Wilson’s attempts to have a conversation. He then turned as if to return to the train. But as another detective approached, Liu turned back toward the terminal and started to run. Wilson seized him and handcuffed him.
In the meantime, Barrios took the bag to the common luggage area of the coach car and had a police dog sniff the suitcase for drugs. The dog alerted to the bag and Liu, already detained by Wilson, was arrested. In a conference room at the station, Liu consented to a search of his bag, which revealed a credit card embossing machine and magnetic decoding device (but no drugs). The detectives also found counterfeit credit cards that he had concealed in the waistband of his pants. He was charged in two counts with knowingly, and with intent to defraud, having control and custody of and possessing device-making equipment, in violation of 18 U.S.C. § 1029(a)(4), (c)(2). Liu filed a motion to suppress evidence and statements as illegally obtained.[3] The motion was sustained in November 1998. The government appeals.
The Magistrate Judge recommended suppression of the evidence, concluding that Barrios had conducted an unconstitutional search of the bag by feeling it as he did without reasonable suspicion and that Liu was seized, when he “attempted to avoid” the detectives, without reasonable suspicion or probable cause, that is, illegally. Report and Recommendation at 11. The court also rejected the contention that Liu forfeited his right to challenge a search of his bag by abandoning it.
*960 We take up the abandonment issue first because our resolution of the question could make it unnecessary for us to decide the other issues on appeal. See United States v. Washington, 146 F.3d 536, 537 (8th Cir.1998). If Liu abandoned his bag, then the evidence obtained from the subsequent consensual search of the bag and the statements he made are not “fruit of the poisonous tree” but are admissible at trial. We review the District Court’s factual finding regarding abandonment for clear error. We will affirm the court’s decision that Liu did not abandon the suitcase unless the finding is “unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made.” United States v. Tugwell, 125 F.3d 600, 602 (8th Cir.1997) (citations to quoted cases omitted), cert. denied, — U.S. —, 118 S.Ct. 721, 139 L.Ed.2d 661 (1998).
When a person abandons his luggage, his expectation of privacy in the property is so eroded that he no longer has standing to challenge a search of the luggage on Fourth Amendment grounds. See id. In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstances, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property. See United States v. Landry, 154 F.3d 897, 899 (8th Cir.1998), cert. denied, — U.S. —, 119 S.Ct. 836, 142 L.Ed.2d 692 (1999). Further, “[w]hether an abandonment has occurred is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner’s subjective intent.” Tugwell, 125 F.3d at 602.
It is without dispute that Liu never verbally denied ownership of his bag; indeed, he affirmed his ownership more than once. But he nevertheless may have abandoned the bag by physical relinquishment, even while claiming ownership, since a verbal disclaimer of ownership is not required for a finding of abandonment. See, e.g., California v. Hodari D., 499 U.S. 621, 624, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (noting that drugs discarded by defendant while running from officer would be considered abandoned, if defendant at the time of abandonment was not seized within the meaning of the Fourth Amendment); Landry, 154 F.3d at 899 (holding that district court’s finding of abandonment was not clearly erroneous where defendant placed paper bag on the ground behind wheel of garbage dumpster and walked to pay phone fifty feet away). We conclude that the District Court clearly erred when it considered the facts relating to physical relinquishment and found that Liu did not abandon the bag.
The court noted three circumstances that it considered in reaching its decision. First, the court said, Liu “was not free to take his bag with him when he exited the train.” Report and Recommendation at 12. While this may be true, the detectives never told him as much, and he never made the slightest attempt to take the bag. As far as Barrios and Wilson knew, Liu believed he could leave with the bag, but he walked off without making any effort to take it, leaving it in a public place. That the detectives may not have allowed him to take the bag, had he tried, is beside the point; it simply has nothing to do with the behavior Liu displayed to the detectives.
The court also relied on the fact that Wilson heard Liu say he was looking for a woman as he left the train, noting that a “reasonable inference” is that he was planning to return. Id. We fail to see how leaving the train to look for a woman gives rise to an inference that he was planning to return; it seems just as likely that he intended to make his escape with the woman’s assistance, if indeed such a woman existed. But reasonableness aside, it was clear error for the court to find that *961 Wilson inferred that Liu intended to return to the train when it is apparent from Wilson’s testimony (with no indication that the court found his testimony not credible) that he inferred quite the contrary based on the objective facts available to him: Liu was fleeing the premises. See Transcript of Suppression Hearing at 88 (Testimony of Dan Wilson) (“[Tjhere was a reasonable suspicion at that point because of his actions on the train when Detective Barrios was talking to him, and I observed this, and he just up and left his bag and walked off and said he was looking for a woman. That was suspicious to me and that’s why I followed him.”). The inference suggested by the Magistrate Judge goes to Liu’s subjective intent, whatever it may have been, and is not an objective fact known to the detectives; thus it is not relevant to the inquiry.
Finally, the court stated that “[t]he officers prevented defendant from returning to the train (and his luggage) when they seized and handcuffed him.” Report and Recommendation at 12. This is a clearly erroneous finding. Liu had already walked away from the bag and, when he was seized, he had started to run — not in the direction of the train, but away from it. Such behavior is not indicative of an intent to return. Because Liu was running away from the train when seized and was not stopped as he was trying to make his way back to his luggage, it follows that the seizure did not prevent him from returning to the train and his luggage. “[I]n light of the entire record, we are left with a firm and definite conviction that a mistake has been made.” Tugwell, 125 F.3d at 602 (citation to quoted cases omitted).
Further, the court in its abandonment analysis failed to note other objective facts known to the detectives and so did not consider the totality of the circumstances. For example, Liu had claimed ownership of a suitcase that fit the profile (determined by visual examination alone) of the sort of bag often used by drug couriers. He gave his consent for Barrios to search the suitcase, but then revoked it as the search began. When Barrios asked to see Liu’s ticket, he walked off the train without responding and without even attempting to take the suspicious bag. Further, from his first encounter with the detectives he appeared unusually nervous. These are among the relevant objective facts known to the detectives who determined that Liu had abandoned the bag, and all such facts should have been considered by the District Court. See Landry, 154 F.3d at 899 (“[W]hether [defendant] intended to retrieve the bag, leave the bag for another person, or abandon the bag is not relevant to the issue of whether the objective facts available to the officers support a finding that [defendant] abandoned the bag.”). We conclude that the court’s finding that the bag was not abandoned is unsupported by substantial evidence and therefore is clear error.
Liu argues that his failure to take the bag when he left the train was not an abandonment within the meaning of the Fourth Amendment because it was not voluntary, that is, it “resulted from a Fourth Amendment violation by manipulating a bag in a manner to determine the contents without visual inspection.” Brief of Appellee at 11. It is true that “abandonment cannot be the product of unlawful police conduct.” United States v. Segars, 31 F.3d 655, 658 (8th Cir.1994), cert. denied, 513 U.S. 1099, 115 S.Ct. 772, 130 L.Ed.2d 667 (1995). We need not reach the question of whether Barrios’s “manipulation” of the bag was unconstitutional, however. For even if the abandonment followed an unlawful search, it was not an involuntary abandonment if it “was a voluntary act of will that independently legitimated the subsequent search.” Washington, 146 F.3d at 537. Liu’s detention on the train was consensual, and he was permitted to leave the train when he wanted to. He was not seized until he began to run, having already left the bag behind. His abandonment was not “tainted in the *962 constitutional sense” notwithstanding that Barrios asked him about the bag and Wilson followed him off the train. Id. “The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary.” Segars, 31 F.3d at 658 (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir.), cert. denied, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1988)). We conclude, as did this Court in similar circumstances in Washington, that Liu’s abandonment of his bag (and with such abandonment his forfeiture of any Fourth Amendment rights he had to challenge a subsequent search of the bag) was “a voluntary decision of his own free will.” Washington, 146 F.3d at 538.
In sum, we hold that the District Court clearly erred in finding that Liu did not voluntarily abandon his bag. We therefore need not and do not reach the question of the constitutionality of the exterior “manipulation” of the bag or of the seizure of Liu after he began to run away from the train. The judgment of the District Court sustaining the motion to suppress is reversed and the case is remanded for further proceedings.

. Neither the Magistrate Judge in the Report and Recommendation nor the parties in their briefs separately analyzed the law applicable to the statements that were the subject of the suppression motion, or even identified what those statements were. As far as we can tell from the record, Liu made the statements at issue after he had been arrested and read his rights, after his luggage had been opened and searched with his consent, and after the counterfeiting devices had been found. We therefore understand Liu's argument to be that both the statements and the evidence should be suppressed on the same basis: as “fruit of the poisonous tree.” The analysis that follows therefore applies to the statements as well as to the evidence.