# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellant,*

          v.

GWAINE COLLINS,
          *Defendant-Appellee.*

No. 04-50065

D.C. No.
CR-03-00629-FMC-
05

OPINION

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted
February 7, 2005—Pasadena, California

Filed October 28, 2005

Before: Harry Pregerson, William C. Canby, Jr., and
Robert R. Beezer, Circuit Judges.

Opinion by Judge Canby

14833

**COUNSEL**

Fred A. Rowley, Jr., Assistant United States Attorney, Criminal Appeals Section, Los Angeles, California, for the plaintiff-appellant.

Sonia E. Chahin, LaCanada, California, for the defendant-appellee.

**OPINION**

CANBY, Circuit Judge:

Gwaine Collins was indicted with five others and charged with conspiracy to retain and deliver, and retaining and delivering, stolen United States treasury checks. See 18 U.S.C.

§§ 371, 510(b). He moved to suppress evidence found in a search following his warrantless arrest. The district court concluded that Collins' arrest violated the Fourth Amendment because federal agents did not have probable cause to believe that he was participating in the stolen treasury check "ring." The district court consequently suppressed the fruit of the arrest. The government appeals pursuant to 18 U.S.C. § 3731. We affirm the district court's order.

## I

A major development in the district court frames the district court's factual findings and our decision on appeal. The district court found inexplicable discrepancies between, on the one hand, the events as depicted in an audio recording and reports of agents nearly contemporaneous with the arrest and, on the other hand, later statements, reports and testimony of the agents. Accordingly, the district court discredited the later statements, reports and testimony, and confined its determination of probable cause to the sparse earlier evidence. The government does not challenge the adverse credibility finding on appeal, but contends that the remaining evidence was sufficient to establish probable cause. We agree with the district court, however, that the evidence, with its crucial gaps and lack of facts connecting Collins with the other actors, was insufficient.

## II

The evidence accepted by the district court as credible established the following. The United States Secret Service began investigating a "ring" trafficking in stolen treasury checks. The investigation focused on Michael Pass. Pass frequently met with a confidential informant. Pass often provided stolen checks to the confidential informant, in pursuit of a scheme to negotiate the checks and deposit the proceeds in offshore bank accounts. The two met several times in an office building in California. Pass told the confidential infor-

mant that he had several "connect[s]" (sources) for the stolen checks.

On July 31, 2003, Pass agreed to deliver several stolen checks, with a total face value exceeding $400,000, to the confidential informant. Pass told the confidential informant that his "connects" wanted payment for the checks. At the meeting, the confidential informant wore a wire that transmitted back to federal agents waiting outside the office building. The conversation was recorded. The confidential informant also remained in occasional contact with the agents through a phone in the office. Two agents maintained surveillance of the public parking lot next to the office building.

Pass had arrived at the meeting alone with several stolen checks, but he stated that more checks were on their way. After making and receiving several calls on his cellular phone, Pass told the confidential informant that his "guys" would arrive within ten minutes with more checks.[1] He then told the confidential informant that he was going downstairs to his car, where he was going to make the exchange and bring back the rest of the checks.

Pass went into the public lot under surveillance and sat in his car. Shortly thereafter, a white Cadillac pulled into the parking space next to Pass's car. Almost immediately thereafter, a gray Toyota Corolla pulled into the parking space on the other side of Pass's car.

The agents then observed a Hispanic male (Edgardo Flores) enter Pass's vehicle. It is not at all clear where Flores came

---

[1]The district judge stated that a "fair reading of the transcript supports the conclusion that Pass was expecting more than one person." Collins does not dispute this interpretation. Therefore, even though the government's use of the word "guys" in its briefs is not completely accurate in the context of the entire transcript, we assume that Pass intended to meet one or more persons.

from. The government does not contend that agents observed Flores and Collins arrive together in the white Cadillac, but it suggests that agents could properly infer that the men arrived together from their appearance at approximately the same time, coupled with other surrounding circumstances. Because two cars arrived almost simultaneously on each side of Pass's vehicle, however, there is no way of knowing which one (if, indeed, either) brought Flores to the scene.

Agents next observed an "African-American male, later identified to be Collins," standing next to the Corolla and talking to its driver. Again, it is not entirely clear where Collins came from. The government does not contend that agents observed Collins drive the Cadillac into the lot, but it argues that agents could infer that fact from the timing of the car's arrival and the surrounding circumstances. [*Id.*] That may be a reasonable inference.

Pass and Flores then got out of Pass's car and approached the office building. Once they were inside, agents arrested them and found an envelope of stolen checks. [*Id.*]

Meanwhile, Collins finished speaking with the driver of the Corolla and entered a Quizno's restaurant that bordered the parking lot. Collins purchased a drink and walked out of the restaurant. Agents entered the lot and arrested him and the driver of the Corolla (Sergio Balsinde).[2] This arrest occurred at the same time that officers arrested Flores and Pass. [*Id.*] Police later released Balsinde.

---

[2]After arresting Collins, police impounded his car. A subsequent inventory search produced, among other things, a day planner that contained account information that the confidential informant had given Pass. The district court suppressed this evidence because it was the fruit of the unlawful arrest.

## III

**[1]** We conclude that the agents lacked probable cause to believe that Collins was committing, or had committed, a criminal offense.[3] We recognize that the standard for probable cause is not terribly demanding. It merely asks whether, under the totality of the circumstances, a prudent officer would have believed that there was a fair probability that Collins committed a crime. *E.g.*, *United States v. Hernandez*, 322 F.3d 592, 596 (9th Cir. 2003) (stating standard). On the record before us, the answer is "no."

**[2]** As the district judge noted, the relevant inquiry is what the agents knew, collectively, at the time they arrested Collins. Facts uncovered after the arrest are irrelevant. *See Allen v. City of Portland*, 73 F.3d 232, 236 (9th Cir. 1996) (amended opinion) (stating that facts uncovered "as a result of a stop or arrest cannot be used to support probable cause unless they were known . . . at the moment the arrest was made."). As the facts already recited indicate, the only thing the agents knew about Collins was that he had shown up (perhaps in the white Cadillac) in a public parking lot, had talked briefly to the driver of another car in that lot, and had gone into a fast-food restaurant and purchased a drink. It is true that the agents were expecting a person or persons to arrive in the lot who would be carrying stolen checks. At least one such person, Flores, did arrive and was carrying checks. Entirely missing, however, was any connection between Collins and Flores other than the fact that they appeared (from somewhere) in a public parking lot relatively contemporaneously. Equally missing is any connection between Collins and Pass.

**[3]** These facts did not give rise to a fair probability that Collins was part of the conspiracy. The principal fact that tied

---

[3]We review de novo whether agents had probable cause for a warrantless arrest. *United States v. Juvenile (RRA-A)*, 229 F.3d 737, 742 (9th Cir. 2000).

Collins to this criminal activity was his "mere propinquity to others independently suspected of criminal activity," which "does not, without more, give rise to probable cause." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979) (holding that officers lacked probable cause to search the defendant solely because of his presence in a tavern in which the officers suspected the bartender dealt heroin). The facts showed only that Collins was close to the wrong people at the wrong time.

**[4]** The connections ended there. Collins was not associating with a suspected conspirator. Furthermore, before arresting him in the public parking lot, the agents had never suspected Collins, or even heard of him, throughout their lengthy investigation of the stolen check ring. There simply was no individualized suspicion of Collins, save whatever was lent by proximity and timing.[4] *See id.* at 90-91. While this knowledge may have created reasonable suspicion, it did not rise to the level of probable cause.

The government challenges this conclusion, primarily relying on *Maryland v. Pringle*, 540 U.S. 366 (2003). In *Pringle*, the Supreme Court held that officers had probable cause to arrest the defendant for possession of cocaine because officers found cocaine in the rear seat of a vehicle in which Pringle was the front-seat passenger, they found a large amount of cash in the glove box in front of Pringle, and the other two occupants denied ownership of the cocaine. *Id.* at 368, 372. The government contends that the case at bar is closer to *Pringle* than *Ybarra*.

---

[4]This case is therefore distinguishable from *United States v. Segars*, 31 F.3d 655 (8th Cir. 1994), cited by the government. In *Segars*, there was reason in addition to timing to single Segars out because, among other reasons, police knew that the suspected drug courier would arrive at a certain place in Minnesota in a vehicle with Michigan license plates. *Id.* at 659. After the scheduled arrival, Segars went directly to the apartment door of a known drug dealer. *Id.* Here, however, agents had no personal information about Collins or his vehicle and no other facts to identify Collins as a probable co-conspirator.

In *Pringle*, however, officers found the defendant in a private vehicle with only two other occupants. The Court distinguished *Ybarra* because the intimate interior of the vehicle was not like a public tavern, noting that " 'a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the . . .' " *Id.* at 373 (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999)). This distinction is important. The intimate interior of a private vehicle is worlds apart from the public parking lot of a strip mall.

Unlike the interior of a private vehicle, the public parking lot setting does not support the inference that everyone in a segment of the parking lot probably knows each other (*and* that they are participating in the others' illegal activities). Like Collins, the driver of the Corolla did not associate with Pass or Flores. Therefore, by speaking with the Corolla driver, Collins did not provide agents with a probable link in the associational chain.

**[5]** The government is correct that contemporaneous association with known criminal activity contributes to a finding of probable cause. *See, e.g.*, *United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984). The problem is that, although the credited facts show contemporaneity, they do not show association.[5] The only facts offered to show association are proximity and timing and, under *Ybarra*, that is not enough.

---

[5]For the same reason, the government's reliance on *United States v. Vizcarra-Martinez,* 66 F.3d 1006 (9th Cir. 1995), is unavailing. There, officers had more than ample evidence of Vizcarra-Martinez's association with those suspected of criminal activity; he had backed his car into a garage where other suspects were storing and transferring precursors of methamphetamine. *See id.* at 1011. "Vizcarra-Martinez was not merely observed associating with those suspected of criminal activity; his own actions, and the other facts known to the police, strongly suggested . . ." that he was engaged in criminal activity. *Id.* at 1012.

Similarly, in *United States v. Howard,* 758 F.2d 1318 (9th Cir. 1985) (per curiam), agents had probable cause because they saw Howard in his

## IV

**[6]** The district court recognized that this was an unusual case, largely because much of the agents' evidence was discredited. The district judge stated that the granting of motions to suppress was "almost as rare as hen's teeth. I think I have done two in ten years and none in federal court." We agree, however, with the district judge that, with the evidence stripped to its bare bones by the uncontested adverse credibility ruling, there was insufficient evidence of probable cause to support the arrest. The order of the district court granting the suppression motion is accordingly

**AFFIRMED.**

---

vehicle talking to a person, who then walked up and delivered a message to another person attempting to cash an altered money order in a post office. Howard stayed outside with his car engine running, and shifted gears to leave when a postal inspector approached. *Id.* at 1319. Collins provided no similar link to the persons known to be engaged in criminal activity, and engaged in no other suspicious moves.