*1152 KOZINSKI, Circuit Judge,
dissenting:
Probable cause requires “facts indicating] that [law enforcement officers] will find what they are looking for in the place to be searched.” United States v. Johnson, 256 F.3d 895, 906 (9th Cir. 2001) (en banc). This is not a high standard but the government came nowhere close to meeting it here.
The government’s entire case rests on four meetings between Faagai and John Penitani, a suspected meth dealer. Despite observing most of these meetings and assiduously wiretapping Penitani’s phone, officers never saw a handoff of money or contraband, nor heard an explicit mention of drugs. In fact, they saw and heard nothing objectively suspicious.
The most probative evidence supporting the search was a conversation between Penitani and Faagai where they discussed meeting at Costco to buy food. Agents testified that they “believed [food] to be a code” for drugs. But there was no expert testimony or any other evidence supporting the speculation that food stood for drugs. See United States v. Bailey, 607 F.2d 237, 240 & n.6 (9th Cir. 1979) (discussing expert’s testimony on the meaning of alleged code words).. Many people go to Costco to buy food. If talking about shopping for food at Costco were sufficient to justify a search, many of us would be searched by the police twice a week— thrice right before Thanksgiving. Nor does it make any sense to substitute food for drugs when talking about where to meet. If Penitani and Faagai were meeting up to conduct a drug deal, why specify the purpose of the meeting? Why say “Let’s meet at Costco for a drug transfer” rather than just “Let’s meet at Costco,” with the purpose of the meeting understood?
There was nothing remotely suspicious about the two men’s discussion of “tools.” The majority seems to misunderstand them relationship when it states that “[e]ven assuming that Faagai may have needed tools for his work, there is no indication that Penitani would have been able to supply them.” But since Faagai worked in construction, he would presumably have needed and owned certain tools. And when Faagai texted Penitani “I really need my tools so I can get back to work bro wat time we looking at,” Faagai was clearly requesting his tools, implying that Penitani had borrowed tools that belonged to Faagai and that were necessary for Faagai’s work. Penitani even apologized to Faagai for “taking long with da tools,” which would make sense if the tools were Faagai’s to begin with. Why is it suspicious or implausible that Penitani, who wasn’t in construction, would borrow tools from Faagai, who was? The majority never explains.
The fact that the two men decided to meet in a place with “hardly any people” cuts the wrong way. The government commonly argues that drug dealers intentionally seek out busy locations because a “high volume of pedestrian and vehicle traffic can mask drug-dealing activity.” United States v. Ruiz, 785 F.3d 1134, 1138 (7th Cir. 2015). Here, the government claims the opposite, evidently trying to have it both ways. At best, this fact is irrelevant: There was nothing incriminating about the two men’s preference for a quieter location.
The majority deems it “unlikely that Faagai and John Penitani met at the Ka-polei Costco to shop for food” because there was another Costco much closer to downtown Honolulu. But as savvy shoppers know, not all Costeos are the same. For example, the Kapolei location is twenty years newer than its downtown Honolulu counterpart, and features a “fresh deli.” Compare Costco Wholesale, Find a Warehouse: Kapolei Warehouse, https://wmm. costco.com/warehouse-locations/kapolei-hi- *1153 1038.html (last visited July 14, 2017), with Costco Wholesale, Find a Warehouse: Iwilei Warehouse, https:llwww.costeo.eoml warehouse-locations/iwilei-honolulu-hi-687.html (last visited July 14, 2017). These are entirely innocent reasons for preferring the Kapolei store.
The majority’s remaining justifications for the search fare even worse. Officers told Faagai that his vehicle was involved in a robbery: Faagai knew this wasn’t the case, so his indignant response makes perfect sense. Since any innocent person might react that way, I don’t understand how his outburst suggests drug dealing. To the contrary, I should think that someone hauling drugs would be less likely to mouth off to the police. That Faagai walked away empty-handed from Penita-ni’s truck suggests nothing at all about drug trafficking. And while one might wonder why Penitani asked his associate about Faagai’s trustworthiness, or why Faagai fudged his story when pulled over, this hardly indicates there were drugs in the car when Faagai was stopped.
At no point was there obvious evidence of drug dealing. Instead, the government relies entirely on Faagai’s association with Penitani, viewing their every interaction as suspicious because of Penitani’s drug-dealing past. But for Penitani’s history, these interactions would seem perfectly innocuous. And, as we have held time and again, mere association with others involved in criminal activity does not give rise to probable cause. See United States v. Collins, 427 F.3d 688, 691 (9th Cir. 2005); United States v. Del Vizo, 918 F.2d 821, 826 n.7 (9th Cir. 1990).
The majority strings together a sequence of events like beads on a strand, but doesn’t explain how any of them provide probable cause that Faagai was carrying drugs in his car when he was stopped. Nor do my colleagues reckon with a long line of our cases holding that police suspicions lacking objective evidence are insufficient to establish probable cause. See, e.g., United States v. Cervantes, 703 F.3d 1135, 1139 (9th Cir. 2012); Johnson, 256 F.3d at 905; United States v. Vasey, 834 F.2d 782, 788 (9th Cir. 1987). Instead, they fall back again and again on their dubious theory of code words, treating words like “food” and “tools” as nefarious. There’s a vicious circularity to this logic: With the luxury of hindsight, anything at all that Faagai and Penitani might’ve discussed can simply be labeled “code for drugs.”
Here’s what this case boils down to: Officers had a hunch that a drug transaction was going down. They saw nothing obviously suspicious, but got tired of waiting, watching and wiretapping. They then jumped the gun by executing a warrant-less search. Until today, this was not enough to support probable cause, but going forward it will be. This is a green light for the police to search anyone’s property based on what officers subjectively believe — or claim to believe — about someone’s everyday conduct. That puts all of us at risk. Accordingly, I dissent, and I’m off to Costco to buy some food.