Jennifer A. Dorsey, U.S. District Judge
Sagar Navin Patel sues Las Vegas Metropolitan Police Officer Boe Dennett for excessive force and free-speech violations arising out of an altercation on Paradise Boulevard in Las Vegas. Dennett moves for summary judgment. Because there are genuine disputes of material fact about whether Dennett used excessive force in response to Patel's exercise of his free-speech rights, and because Dennett is not entitled to qualified immunity, I deny the motion.
Background
On April 4, 2014, Patel, an Indian-American man, traveled to Las Vegas with several of his family members for a bachelor party.[1] The next day, they watched some basketball games, ate lunch around noon, visited casinos on the Strip, and eventually headed to a strip club. Patel consumed alcohol throughout the day. At around midnight, the group left the strip club and walked down Paradise Boulevard in search of dinner. They contemplated a Japanese restaurant, decided they wanted something else, and continued down Paradise toward some advertising lights they saw in the distance. Frustrated with the lack of options, Patel, who was walking 15- 20 feet behind his friends, shouted to them, "is there any fucking place to eat around this place?"[2] From their patrol car, Dennett and his partner, Joseph Smith, heard Patel *891 yelling obscenities.[3] At this point, Dennett's and Patel's accounts of what happened diverge considerably.
A. Dennett's account
Dennett testified that he and Smith first observed Patel yelling obscenities and attempting to enter a closed business.[4] Officer Maile Hanks, who had been driving a patrol car behind Dennett, also noticed Patel walking behind his group shouting obscenities.[5] Dennett saw Patel's cousins attempt to coax him along, but Patel responded by yelling profanities at them and telling them to back off.[6]
Dennett rolled down the passenger-side window of Smith's patrol car and told Patel to go home.[7] Patel responded by saying "shut the fuck up" and "fuck you."[8] Smith saw Patel flip Dennett off.[9] Dennett testified that Patel continued to yell and scream at Dennett and the people in his group, so Dennett decided he needed to stop and speak with him. Smith turned on the lights to his patrol car, made a U-turn, and pulled over approximately ten feet in front of Patel.[10] Dennett got out of the car and directed Patel to come over to the patrol car.[11] According to Dennett, Patel was agitated and appeared to be under the influence of drugs or alcohol.[12] Dennett recalls that Patel "blad[ed] off" with him in a "fighting-type stance."[13]
While Dennett approached Patel, Smith approached Patel's group to keep them separated from Patel and Dennett. Patel resisted as Dennett escorted him to the patrol car, so Dennett put Patel into a "handcuffing arm lock."[14] Dennett testified that he wanted to handcuff Patel so that no additional force would be necessary.[15] Dennett then asked Smith to assist him and told Patel to put his other arm behind his back. Patel refused.[16] Hanks also observed Patel resisting and "spinning his torso so that he could get away from the officer's grip."[17]
Dennett testified that when they arrived at the patrol car, Patel pushed backwards against Dennett, then immediately "leaped" forward.[18] At that moment, Dennett heard a popping noise from Patel's arm and immediately let go. Dennett told Smith that he believed Patel's arm was injured. The officer laid Patel on the ground and immediately called paramedics. [19]
*892 Patel continued to resist while Smith was holding him down waiting for the medical team to respond.[20]
B. Patel's account
Patel testified that he never attempted to enter any closed businesses, and that he was just frustrated with his group's inability to find a place to eat on Paradise Boulevard.[21] His group was not trying to calm him down or coax him, and he was not swearing or yelling at them.[22] While Patel had been drinking moderately during the day, his cousin testified that he did not believe Patel was drunk.[23] The first time Patel encountered the officers was when Dennett rolled down his window and said something along the lines of "why don't you go back to where you came from?"[24] The phrasing and Dennett's tone caused Patel to believe that Dennett was making a racist statement.[25] Patel responded by saying "shut the fuck up" and "fuck you." Sometime during their interaction, Hanks and Dennett recall Patel yelling "I'm an American."[26]
Dennett and Smith then made a U-turn and stopped about ten feet in front of Patel. When Dennett got out of the car, Patel got scared because Dennett looked angry.[27] Patel put his hands up to show that he didn't want "to cause any problems."[28] Patel's cousin, who was with him at the time, recalls Patel raising his hands and saying "I'm sorry, I'm sorry."[29] Without telling Patel to come to the patrol car or giving any other commands, Dennett, who was approximately twice Patel's size,[30] "rushed" toward Patel, immediately grabbed his arm, and "aggressively forced" him toward the patrol car. Patel recalled Dennett saying something to the effect of "what did you just say to me?"[31]
Dennett took Patel to the patrol car and kept repeating "he's resisting," "he's resisting."[32] Patel testified that he was not resisting and repeatedly told Dennett that he was not resisting.[33] He stated that Dennett had his left arm twisted behind his back and was pulling it toward the right side of Patel's body. Patel could not describe the type of pressure on his arm, but stated that Dennett kept asserting "more and more force" until his arm snapped.[34] Patel testified that at no point was he resisting, twisting away from Dennett, or leaping forward.[35] While Dennett was pulling his arm, Patel heard a pop and starting shouting "you broke my arm, you broke my arm."[36] Dennett stopped asserting force, laid Patel down on the concrete, and called the paramedics.
*893 C. Patel's injury and treatment
Both parties agree that Patel was treated by paramedics and brought to the University Medical Center (UMC). UMC records reflect that Patel "was being placed in handcuffs, subsequently had movement of the left arm when he was being placed, resulted in immediate onset of pain to his left arm."[37] Another report stated that "the patient jumped backwards and in doing so, twisted his left arm backwards causing a snap."[38] The discharge report indicated that Patel suffered a closed distal humerus fracture. Doctors gave Patel pain medication, put his arm in a sling, and discharged him with instructions to seek further medical treatment once he returned home.[39] Patel received follow-up treatment at Kaiser hospital in California. While the records show that his fracture healed, they also indicate that Patel still suffers "some discomfort, deformity, and slight loss of elbow flexion."[40]
D. Medical expert opinions on the causation of Patel's injury
Dennett's retained medical expert, Dr. Mark McKenzie, provided his medical opinion that that the type of fracture Patel suffered could not have been caused by an arm lock alone.[41] He opined that Dennett's report of Patel abruptly bending at the waist and leaping forward caused an acceleration that would have been required to cause such a fracture. Patel's medical expert, Dr. Andrew Cash, opined that the "behind-the-back arm lock" technique could cause Patel's fracture if "torsional force were applied through the arm ... either with the shoulder or elbow as the locked pivot points."[42] So, Dr. Cash opined, "if the officer held the elbow stable and rotated the patient's forearm away from the patient's body backwards, the fracture could occur."[43]
E. Patel's criminal case
On April 30, 2014, a summons was issued to Patel in the Las Vegas Justice Court on his disorderly-conduct and obstructing charges. On December 11, 2014, the obstructing charge was dismissed and Patel "submitted" to the disorderly conduct charge, which conditioned dismissal on Patel "staying out of trouble." The charge was eventually dismissed.[44]
F. Patel's claims
Patel sues Dennett, alleging that Dennett violated his First Amendment rights, arrested him without probable cause, and used excessive force to effectuate the arrest. Dennett moves for summary judgment on all of Patel's claims.[45] Dennett contends that Patel's disorderly conduct supported probable cause and that Patel's resistance, not Dennett's force, caused Patel's injuries.[46] Dennett also contends that he is entitled to qualified immunity on the false-arrest and excessive-force claims.
Discussion
Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a *894 matter of law."[47] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[48] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[49]
If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[50] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[51]
A. False-arrest claim
1. Smiddy immunity
Dennett relies on the Smiddy v. Varney[52] cases to assert that, because the District Attorney's Office filed charges against Patel, Dennett is completely "immunized from Patel's claim that he lacked probable cause."[53] But this is a broad misstatement of Smiddy II 's holding. A police officer is immunized from liability "for harm suffered after the prosecutor initiated formal prosecution ."[54] Any harm suffered before the initiation of prosecution falls squarely on the officers. So I reject the argument that Dennett is completely immune from his actions merely because the DA decided to press charges.[55]
2. Probable cause
To prevail on a false-arrest claim, a plaintiff must "demonstrate that there was no probable cause to arrest *895 [him]."[56] "Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to cause a reasonably prudent person to believe that a crime has been committed."[57] The "relevant inquiry is what the agents knew, collectively, at the time they arrested" the plaintiff.[58] Probable cause only requires a "fair probability" that a crime occurred.[59]
If a plaintiff was arrested for multiple offenses, the facts need only establish that probable cause existed for one offense.[60] And a governmental official is entitled to qualified immunity on a false-arrest claim if a reasonable officer in his position could have believed that probable cause existed.[61] In Nevada, a police officer may arrest a person for a misdemeanor offense committed in the officer's presence.[62]
Dennett argues that he had probable cause to arrest Patel. He claims that, by "belligerently yelling at Dennett, Patel obstructed Dennett in his investigation of potential disorderly conduct."[63] This argument has been made to, and rejected by, the Ninth Circuit on at least two occasions. In Duran v. City of Douglas ,[64] plaintiff Duran was pulled over for drunkenly directing obscene gestures and yelling profanities at officers from the passenger side of a vehicle. During the traffic stop, Duran continued using profanities and refused to get out of his car.[65] The officer decided to arrest Duran for disorderly conduct and a "scuffle ensued," injuring Duran and the officer.[66]
The Ninth Circuit found that the officer was not entitled to qualified immunity for the arrest because there was no "legitimate, articulate reason" to detain Duran.[67] The court specifically noted that there "was no evidence of a danger to public safety... nor was there any evidence that Duran was in possession of a controlled substance or had been or was about to be engaged in criminal activity."[68] He noted that the car was "traveling on a deserted road on the outskirts of town" so Duran's conduct could not have disturbed the peace.[69] Further, the court credited Duran's contention that one possible motive for his detention was retaliation for the insults he hurled at the officers while he was in his car.[70] And because it was clearly established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police *896 officers," the officer was not entitled to qualified immunity.[71]
In Velazquez v. City of Long Beach ,[72] the Ninth Circuit affirmed that, viewing the evidence in a light most favorable to the plaintiff, an officer who arrests a plaintiff for disorderly conduct because the plaintiff exercised his First Amendment rights to criticize the police was not entitled to judgment in his favor. There, officers were called in to break up a group of people causing a noise disturbance in a residential neighborhood.[73] Velazquez asked the officers what was going on, which prompted an officer to put the non-resisting Velazquez in a wrist lock, force him to the ground, and strike him multiple times with a baton.[74] Velazquez was arrested but never charged with an offense.[75] Again, the court held that a jury could reasonably conclude that the officer arrested Velazquez in retaliation for a perceived challenge to his authority.[76] And because "criticism of the police, profane or otherwise, is not a crime," the jury could conclude that the arrest was unlawful.[77]
Velazquez and Duran direct my finding that, crediting Patel's testimony as true, Dennett is not entitled to qualified immunity on Patel's false-arrest claim. According to Patel's account of the incident, Patel was not acting so disorderly as to cause a scene in the area. He was walking in a largely commercial space, shouting to his friends who were 15-20 feet away, in an area prone to helicopters and commercial planes flying overhead, blocks away from the Las Vegas Strip, with a three-story building separating Patel and any residential buildings.[78] Even according to Dennett, Patel's initial comments and actions were not enough to justify detaining Patel.[79] Rather, it was only after Patel swore at and flipped off Dennett that the officers decided to stop him. A reasonable jury could infer from this chain of events that Dennett's decision to arrest Patel was at least partially motivated by anger at Patel's language and perceived show of disrespect.
Dennett attempts to bolster his argument for probable cause by attaching a crime report map from March 2017 to show that the incident area is a "high-crime area" and therefore further justifies police intervention when individuals are acting disorderly there.[80] Crime data from 2017 has no relevance to an incident that occurred in 2014. And regardless of whether the intersection of Paradise and Twain was a high-crime area in 2014, accepting Patel's account of the facts, Dennett did not detain Patel because he was disorderly-he detained him because Patel swore at him. And because it is clearly established that a citizen has the First Amendment right to criticize officers, even with profanity, Dennett is not entitled to qualified immunity on this claim.
*897 B. Excessive-force claim
The Fourth Amendment prohibits police use of force that "is excessive under objective standards of reasonableness."[81] "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[82] To determine whether an officer is entitled to qualified immunity on an excessive force claim, a court first considers the nature and quality of the alleged intrusion, and then considers the governmental interest at stake by looking at: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.[83] The most important factor is whether the suspect poses an immediate threat to officer safety.[84]
The court's reasonableness inquiry, however, is not limited to these three factors alone. I must consider the totality of the circumstances known to the officers at the time of the arrest and weigh the gravity of the intrusion against the government's interest to determine whether the force employed was constitutionally reasonable.[85] Underlying the "objective-reasonableness test is the clear principle that the force used to make an arrest 'must be balanced against the need for force: it is the need for force [that] is at the heart of the Graham factors."[86] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation."[87]
"Because the excessive force and false arrest factual inquiries are distinct, establishing a lack of probable cause to make an arrest does not establish an excessive force claim, and vice-versa."[88] "[F]orce used by an officer to effectuate an arrest, 'regardless of whether [the officer] had probable cause to [make that] arrest,' may still be reasonable, for instance to overcome the arrestee's forcible resistance."[89] "Nevertheless, Graham counsels that the fact that gave rise to an unlawful detention or arrest can factor into the determination whether the force used to make the arrest is excessive."[90]
*898 Dennett is also not entitled to qualified immunity for his use of force against Patel. The crimes Patel was (potentially unlawfully) arrested for were not severe. Patel was neither resisting arrest nor trying to evade arrest. There is no evidence in the record that Patel was a threat to the officers or anyone else. Patel testified that Dennett exerted enough pressure to break his arm, despite the fact that Patel was not resisting arrest. A reasonable officer could easily conclude that, under these circumstances, that amount of force was unreasonable.
Dennett argues that his medical expert's opinion that Patel's arm couldn't have broken unless Patel resisted should demonstrate that: (1) Patel did, in fact, resist, and (2) that Dennett's use of force did not cause Patel's injury. But Patel's medical expert responded that, indeed, Patel's arm could have broken if Dennett held Patel's elbow and pulled his arm back. Which medical opinion is more credible, and which witnesses should be believed about how the event occurred, is for the jury to decide. There is sufficient evidence for the jury to conclude that Dennett's actions, not Patel's resistance, caused Patel's injury, and that Dennett's use of force was excessive. And Graham 's holding that force is only justified when there is a need for force would have put a prudent officer on notice that exerting enough force to break a non-resisting suspect's arm was a violation of his Fourth Amendment rights.[91]
C. Free-speech claim
Because I have determined above that there are questions of fact about whether Dennett arrested and punished Patel for engaging in speech that is protected by the First Amendment, I deny Dennett's request for summary judgment on this claim as well.
Conclusion
Therefore, it is HEREBY ORDERED that Defendant Boe Dennett's motion for summary judgment [ECF No. 22] is DENIED.

ECF No. 22-1 at 12.

Id. at 15-17.

ECF No. 22-2 at 5, 28.

Id. at 5. Smith testified that she did not see Patel trying to enter any closed businesses. Id. at 31.

ECF No. 22-3 at 5.

ECF No. 22-2 at 5.

Id. Smith and Hanks confirmed that Dennett told Patel to "go home" or something similar, although their accounts of this exchange differ somewhat. Compare ECF No. 22-2 at 5 (Dennett's account) with ECF No. 22-2 at 29-30 (Smith's account) and ECF No. 22-3 at 7 (Hanks's account).

ECF No. 22-2 at 5.

Id. at 30.

Id. at 30; ECF No. 22-3 at 6.

ECF No. 22-2 at 6.

Id. at 6, 14.

Id. at 6.

Id. at 32. Patel described the technique as Dennett pulling his left arm behind his back and to the right side. ECF No. 22-1 at 28.

Id. at 8.

Id.

ECF No. 22-3 at 9.

ECF No. 22-2 at 8.

Id. at 9, 29.

Id. at 33.

ECF No. 22-1 at 17.

ECF No. 22-4 at 53.

Id. at 51.

ECF No. 22-1 at 18.

Id. at 20, 39.

ECF No. 22-2 at 5 (Dennett's deposition); ECF No. 22-3 at 7 (Hanks's deposition).

ECF No. 22-1 at 20, 25.

Id. at 20.

ECF No. 22-4 at 52.

ECF No. 22-2 at 32.

ECF No. 22-1 at 26.

Id.

Id.

Id. at 28.

Id. at 29.

Id.

ECF No. 22-3 at 27.

Id. at 29.

Id. at 30.

See generally id. at 32-59.

See ECF No. 22-4 at 2-5.

Id. at 15.

Id.

See generally id. at 17-28.

ECF No. 1.

ECF No. 22.

Fed. R. Civ. P. 56(a) ).

Kaiser Cement Corp. v. Fischbach & Moore, Inc. , 793 F.2d 1100, 1103 (9th Cir. 1986).

Warren v. City of Carlsbad , 58 F.3d 439, 441 (9th Cir. 1995) ; see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric. , 18 F.3d 1468, 1471 (9th Cir. 1994).

Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ; Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Orr v. Bank of Am. , 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); Bhan v. NME Hosps., Inc. , 929 F.2d 1404, 1409 (9th Cir. 1991) ; Anderson , 477 U.S. at 248-49, 106 S.Ct. 2505.

Smiddy v. Varney , 665 F.2d 261, 266 (9th Cir. 1981) (Smiddy I ); Smiddy v. Varney , 803 F.2d 1469, 1471 (9th Cir. 1987) (en banc) (Smiddy II ).

ECF No. 22 at 16.

Smiddy II , 803 F.2d at 1471 (emphasis added).

Dennett also states that Patel "ratified the finding of probable cause when he entered a plea agreement ...." ECF No. 22 at 16. Dennett provides no support to show why this apparent "ratification" is meaningful. And it is disputed that Patel pleaded guilty at all. Rather, the records show that he "submitted" to the disorderly conduct charge, and that the charge would be dismissed if he "stayed out of trouble." According to the sworn affidavit of Patel's attorney, a submittal is a substitution for a plea and connotes a situation in which a plea is never entered. Rather, the court agrees to dismiss the case without the defendant ever having to enter a plea or sustain a conviction. ECF No. 25 at 49-50. Dennett offers no response to this explanation other than contending that Patel is overly concerned with "semantics." I disagree and do not take Patel's "submittal" into consideration.

Norse v. City of Santa Cruz , 629 F.3d 966, 978 (9th Cir. 2010) (quoting Cabrera v. City of Huntington Park , 159 F.3d 374, 380 (9th Cir. 1998) ).

Lassiter v. City of Bremerton , 556 F.3d 1049, 1053 (9th Cir. 2009) (citing Ybarra v. Illinois , 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) ).

United States v. Collins , 427 F.3d 688, 691 (9th Cir. 2005).

United States. v. Alaimalo , 313 F.3d 1188, 1193 (9th Cir. 2002).

United States v. Magallon-Lopez , 817 F.3d 671, 675 (9th Cir. 2016) (citing Devenpeck v. Alford , 543 U.S. 146, 153-55, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004) ).

See Ramirez v. City of Buena Park , 560 F.3d 1012, 1014 (9th Cir. 2009).

See Nev. Rev. Stat. § 171.124.

ECF No. 22 at 14.

Duran v. City of Douglas , 904 F.2d 1372 (9th Cir. 1990)

Id. at 1374-75.

Id. at 1375.

Id. at 1377.

Id.

Id.

Id. at 1377-78.

Id. at 1378.

Velazquez v. City of Long Beach , 793 F.3d 1010 (9th Cir. 2015).

Id. at 1014-15.

Id. at 1015-16.

Id. at 1016.

Id. at 1022.

Id. at 1023 (citations and quotation marks omitted).

See ECF No. 25 at 27-28. I, myself, am a Las Vegas native and officed in the area in question for many years. I would not describe the intersection of Paradise and Twain as a "residential area."

ECF No. 22-2 at 5; see also id. at 30.

See ECF No. 22-3 at 15-22.

Saucier v. Katz , 533 U.S. 194, 201-02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ; Fontana v. Haskin , 262 F.3d 871, 879 (9th Cir. 2001) (quotation omitted).

Arpin v. Santa Clara Valley Transp. Agency , 261 F.3d 912, 921 (9th Cir. 2001) (quoting Graham v. Connor , 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ).

Mattos v. Agarano , 661 F.3d 433, 441 (9th Cir. 2011).

Smith v. City of Hemet , 394 F.3d 689, 702 (9th Cir. 2005).

Mattos , 661 F.3d at 441.

Blankenhorn v. City of Orange , 485 F.3d 463, 480 (9th Cir. 2007) (quoting Liston v. Cnty. of Riverside , 120 F.3d 965, 976 (9th Cir. 1997) ).

Graham , 490 U.S. at 396-97, 109 S.Ct. 1865.

Beier v. City of Lewiston , 354 F.3d 1058, 1064 (9th Cir. 2004) ; see also Mattos , 661 F.3d at 443 n.4 (rejecting plaintiff's argument that "any amount of force against her" was excessive if the officers did not have probable cause, as the absence of probable cause alone is insufficient to establish excessive force).

Velazquez , 793 F.3d at 1024 (citing Arpin , 261 F.3d at 921-22 ).

Id.

See Blankenhorn , 485 F.3d at 481 (holding that it was clearly established that gang-tackling and punching a relatively calm suspect who was not actively resisting arrest could violate the person's Fourth Amendment rights); see also Deorle v. Rutherford , 272 F.3d 1272, 1286 (9th Cir. 2001) ("It does not matter that no case of this court directly addresses the use of [a particular weapon]. We have held that an officer is not entitled to qualified immunity on the grounds that the law is not clearly established every time a novel method is used to inflict injury.") (citation and quotations omitted).